(787 P.2d 1204)

No. 63,737

WANDA PILCHER, *Appellant,* v. BOARD OF COUNTY
COMMISSIONERS OF WYANDOTTE COUNTY, *Appellee.*

Opinion filed February 2, 1990.

*Michael R. McIntosh*, of Kansas City, for the appellant.

*Wayman W. Favors*, county counselor, and George Maier, Jr., of Kansas City, for the appellee.

Before ABBOTT, C.J., RULON and LEWIS, JJ.

LEWIS, J.: This is an appeal by Wanda Pilcher from the orders of the district court directing verdicts in favor of the Board of County Commissioners of Wyandotte County (Board) on her causes of action against the Board for damages for breach of an implied employment contract, violation of her due process rights, and retaliatory discharge for alleged "whistle-blowing." She also complains that the district court erred in instructing the jury on her claim for retaliatory discharge for filing a workers' compensation claim.

Upon review, we affirm the directed verdicts on the claims for breach of implied contract and violation of due process rights. We reverse the district court on the claim for retaliatory discharge and, further, for errors in instructing the jury on the claim for retaliatory discharge for filing a workers' compensation claim.

Pilcher had been employed by Wyandotte County as a case manager in the county community corrections agency and had been so employed from July 17, 1981, until her alleged wrongful discharge on June 22, 1987. Pilcher's claims against the Board

arise out of at least three separate factual scenarios, none of which are necessarily related to the other.

For its part, the Board denies that it had any improper motives in discharging Pilcher, denies that she had an implied contract, and denies that she was discharged either for "whistle-blowing" or for filing a workers' compensation claim. The Board simply points out that Pilcher missed too many days of work as a result of arm and ankle injuries she sustained when she fell outside the Wyandotte County courthouse. The Board says that, according to its policy, she missed too many consecutive days of work and was discharged for that reason alone.

We first turn to Pilcher's claim that the Board breached an implied contract by discharging her and that she was denied due process in the termination procedure. These two claims are based upon certain oral understandings Pilcher had of what had to take place before someone could be fired from a job at community corrections. Although conceding that she had no written or oral contract with the Board as to terms or the length of her employment, Pilcher contends that it was her understanding that an employee, before being fired, must be given a minimum of three warnings and an opportunity to appear before an advisory board. Pilcher insists that this understanding amounted to an implied contract and that it was breached by the Board by the method in which her employment was terminated.

We first address the issue of implied contract of employment and, specifically, whether the trial court acted properly in directing a verdict for the defendant on this issue.

The Kansas Supreme Court in *Holley v. Allen Drilling Co.*, 241 Kan. 707, 710, 740 P.2d 1077 (1987), discussed the rules to be followed in cases where a motion for directed verdict is filed:

"In ruling on a motion for a directed verdict, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule is also applicable when appellate review is sought on a motion for directed verdict. Further, the same test is applicable to a motion for judgment notwithstanding the verdict. [Citation omitted.]"

In *Sampson v. Hunt,* 233 Kan. 572, 578, 665 P.2d 743 (1983), the Kansas Supreme Court held that the question before a trial court on a motion for a directed verdict *is not*

"whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party. Even where facts are undisputed it is possible that conflicting inferences may be drawn from those facts, and where that is true, the issue must be submitted to the jury. [Citation omitted.] Where no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination. [Citations omitted.]"

Pilcher was seeking to prove that she had an implied contract of employment which laid down certain steps that had to be taken before she could be discharged.

Kansas is an "employee-at-will" state in which the general rule is that, absent an express or implied contract between employer and employee, either party may terminate the employment relationship at any time they please with or without cause. In short, absent a contract, an employee may be discharged at any time and the employer need have no reason or cause for discharging the employee and, by the same token, the employee may quit his job at any time for any reason. See *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976).

There are some exceptions to the general rule. For reasons of public policy, an employee-at-will may not be discharged for filing a workers' compensation claim. *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 493, 630 P.2d 186 (1981). Neither may an employee-at-will be discharged under circumstances where that discharge is against any clear public policy. See *Cain v. Kansas Corporation Commission,* 9 Kan. App. 2d 100, 673 P.2d 451 (1983), *rev. denied* 235 Kan. 1041 (1984).

In the instant matter, we deal with a claim of implied contract. If Pilcher's evidence was not sufficient to go to a jury on this issue, she was nothing more than an employee-at-will and her termination was proper unless one of the exceptions to the general rule applies.

The parties are well aware of the evidence offered on the issue of implied contract and we have generally capsulized that evidence earlier in this opinion.

The issue of whether an implied contract of employment exists is generally one for the trier of fact. However, in this case, the evidence offered by Pilcher was simply not sufficient to carry the issue to a jury. In general, she offered evidence by way of her own testimony and that of a former supervisor to the effect that all of the employees of the department of community corrections believed they would receive three warnings before being fired. Pilcher was unable to support this theory with any written documentations or policy and could not state from whom or where she received this information, simply insisting everyone said it had always been this way.

Without further elaboration and within the perimeters listed by the Kansas Supreme Court in the decisions set forth above, we hold that, on the issue of implied contract, the trial court did not err in directing a verdict for the Board. We also hold that the trial court did not err in directing a verdict on Pilcher's claim that she was denied due process of law.

Pilcher's claim that she was damaged by being terminated without due process of law is actually disposed of by our decision on her implied contract claim. The due process claim is essentially one which states that a party has been deprived of a "property right" without due process of law.

The problem with Pilcher's due process claim is that, as an employee-at-will, she has no vested property interest in her job which is entitled to protection by the Fourteenth Amendment. No property interest in a job exists unless it is created by statute, ordinance, or implied or written contracts. *Stoldt v. City of Toronto,* 234 Kan. 957, Syl. ¶ 2, 678 P.2d 153 (1984). Since none of those elements or conditions were present in this case, Pilcher had no property interest on which to base her claim that her due process rights were violated by her discharge from employment with Wyandotte County and the trial court did not err in directing a verdict on this issue.

Pilcher's third claim against the Board was that she was fired in retaliation for reporting illegal or unsavory practices by her employer.

As we pointed out earlier, there are activities which an employee-at-will may engage in for which the employee cannot be discharged. One of the activities for which an employee may not be fired is that activity commonly known as "whistle-blowing." In essence, public policy dictates that an employee-at-will may not be discharged for reporting an unlawful or improper act of his or her employer. Relief for the tort of retaliatory discharge is available where the discharge contravenes a clear public policy. *Cain v. Kansas Corporation Commission,* 9 Kan. App. 2d 100, Syl. ¶ 6. A public employee cannot be discharged for exercising his or her right to free speech if it regards a matter of public concern. *Riddle v. City of Ottawa,* 12 Kan. App. 2d 714, 754 P.2d 465, *rev. denied* 243 Kan. 780 (1988).

If the evidence shows that Pilcher was discharged because the Board believed that she had reported unsavory and untenable hiring practices to the Kansas City Times, or "whistle-blowing," then that is retaliatory discharge, and she is entitled to recover damages.

In order to maintain and prove that an employee was discharged for "whistle-blowing," he or she must prove that:

"[A] reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report." *Palmer v. Brown,* 242 Kan. 893, 900, 752 P.2d 685 (1988).

During the trial, Pilcher maintained and presented evidence to the effect that she was fired because her superiors *believed* she was the source of an article in the Kansas City Times which was highly critical of certain hiring practices engaged in by the county. The article concerned the hiring of one Barbara Wallace as a presentence investigator in the community corrections department. The newspaper article indicated that, when a presentence investigator position opened up in the department, Wallace applied for the job but was at first turned down and advised that since she had no high school diploma and very little experience in the field, she was not qualified for the position. According to the article, Wallace then stated that they had promised

her the job and she would get it. At the same time that Wallace applied for the job, there was another applicant for the position who had 20 years' experience with legal aid and a degree in criminal justice and was obviously better qualified to fill the position than Wallace. Despite the disparity in qualifications of the two candidates, the newspaper article reported that one of the Wyandotte County Commissioners applied such great pressure in favor of Wallace that community corrections was eventually left with no choice but to hire her rather than the other more qualified applicant.

As might be expected, Wallace was quite upset when the article was published, as were others in county government. According to evidence produced at the trial, Wallace told her superior that she had information to the effect that Pilcher was the source of the article.

The superior to whom Wallace reported her belief that Pilcher was the source of the article is the same individual who ultimately fired Pilcher. According to Pilcher, this individual was very upset because of the article and told her that he could fire her for talking to the newspaper. In fact, according to Pilcher, at the time he informed her she was fired, he stated that perhaps on her next job she would learn to keep her mouth shut.

The evidence indicates that during the trial Pilcher denied, and she still denies, she was the source of the story and asserts she never talked to the newspaper concerning the hiring of Wallace. In this case, the discharge is made wrongful by proof that her employer was motivated to fire her because it believed that she was the source of the uncomplimentary newspaper article. Whether she was the source is not important; what is important is why she was discharged. If the trier of fact concludes she was discharged because her employer believed she was the source of the newspaper article, that discharge is unlawful, and she would be entitled to recover damages.

We believe and hold that Pilcher's evidence showed all of the elements required by *Palmer v. Brown* to carry her case to the jury on the theory of retaliatory discharge for whistle-blowing. We note that the *Palmer* decision discusses discharging an employee for reporting a violation of the law pertaining to public health, safety, and the general welfare. We do not believe that

those areas are exclusive in proving a claim for retaliatory discharge. If the matters reported in the Kansas City Times were true, and there is evidence that they were, the county was engaging in very questionable hiring practices which ultimately would have a detrimental effect on the general welfare of the taxpayers of Wyandotte County. If we were to permit Pilcher to be discharged because the Board believed she was the source of the newspaper article, we would be cutting off a very important source of public information concerning the operation of local and state governments. Therefore, even though the action of the Board in hiring Wallace may not have been in violation of the law, it was certainly sufficiently harmful to the public interest to qualify it as the basis for a claim of retaliatory discharge for "whistle-blowing."

Our focus on this issue is not whether there was literally no evidence supporting Pilcher's position, but whether there was evidence upon which the jury could properly find a verdict for Pilcher. We are convinced and we hold that there was evidence presented upon which the jury could properly have found a verdict in favor of Pilcher on the issue of retaliatory discharge for "whistle-blowing." That being the case, the action of the district court in directing a verdict in favor of the defendant on this issue was in error, and the matter is remanded for a trial on the issue.

The final issue concerns the instruction to the jury on the issue of Pilcher's claim that she was wrongfully discharged in retaliation for filing a workers' compensation claim. The trial court deemed the evidence sufficient to go to jury on this issue.

The basis of Pilcher's contention on this issue is that the trial court erred in not giving a clear definition to the jury on the various ways retaliatory discharge of an employee, who has filed or may file a workers' compensation claim, can be proven. Despite her present claim of error, Pilcher did not object to the instructions at the time of trial.

In Kansas the law is clear that a jury's verdict will not be reversed on the basis of improper instructions unless the party complaining of the instructions has made a timely objection, unless that instruction is clearly erroneous on its face. *Douglas v. Lombardino*, 236 Kan. 471, 483, 693 P.2d 1138 (1985).

In *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88-89, 727 P.2d 450 (1986), the Kansas Supreme Court laid down the following standard in reviewing jury instructions:

"It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. [Citation omitted.]"

In the instant matter, instructions three and five are the pertinent instructions:

"No. 3

"The plaintiff contends that she was discharged in retaliation for filing a claim under the Workers' Compensation Act. You are instructed that the plaintiff has the burden of proving by clear and convincing evidence that she was discharged for filing a claim under the Workers' Compensation Act.

"Defendant contends that plaintiff was an employee at will and could be terminated for any reason. Defendant further denies that plaintiff's injuries or Workers' Compensation claim had anything to do with her firing."

"No. 5

"An employee who sustains personal injuries in the course of his employment is entitled by law to receive Workers' Compensation. The employer may not terminate the employment of an employee in order to retaliate against or to punish the employee who files a claim for Workers' Compensation. The termination of employment of an employee in retaliation for filing a claim for Workers' Compensation in the course of his employment is wrongful and unlawful. An employee who is so discharged is entitled to recover damages from the employer."

Pilcher contends that the jury sent a request to the court asking that the court define the difference between workers' compensation and a workers' compensation claim. We note that the question allegedly asked by the jury is not in the record and neither is the court's response to that question. For that reason, we are unable to consider that as evidence on this appeal. However, despite that fact, we are still of the opinion that the instruction given by the trial court was clearly erroneous and the jury verdict against Pilcher on this issue is reversed.

The instructions by the court did not go far enough in advising the jury as to the law of wrongful termination where workers'

compensation is or may be involved. In Kansas it is not only wrongful to fire an employee because he or she has filed a workers' compensation claim, it is equally wrongful to terminate an employee because of his or her absence due to a work-related injury. In *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 816, 752 P.2d 645 (1988), the Kansas Supreme Court held as follows:

"Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state as described in *Murphy v. City of Topeka.*"

*Cf. Rowland v. Val-Agri, Inc.*, 13 Kan. App. 2d 149, 766 P.2d 819 (1988) (retaliatory discharge claim not available to disabled employee receiving workers' compensation benefits who is incapable of performing job duties and for whom no other position can be found).

When examining the record in this case, there is evidence to the effect that Pilcher's absence from work as a result of her work-related injuries was a factor in her termination. There was also testimony to the effect that Pilcher's alleged failure to call in when she was absent was a breach of duty owed to her employer.

The jury instructions quoted earlier advised the jury that the employer may not terminate the employee in retaliation for the employee having filed a workers' compensation claim.

The instructions by the court leave the impression at this point that firing would only be wrongful if Pilcher had filed a workers' compensation claim and was fired for that reason. Those instructions give to the jury only "part of the story." The jury should have been instructed on the "rest of the story" that, even though no claim had been filed, an employee may not be terminated for absences due to a work-related injury which might form the basis for a workers' compensation claim in the future. A termination on that basis would be a retaliatory discharge based upon the possibility of a workers' compensation claim being filed in the future for which retaliatory discharge Pilcher was entitled to damages.

We hold that the failure of the trial court to instruct the jury that a claim of retaliatory discharge may exist, even though no

workers' compensation claim has been filed, if the discharge is based on absences of an employee due to work-related injuries renders the instructions on this issue clearly erroneous. We reverse and remand for a new trial on this issue.

Affirmed in part, reversed in part, and remanded.