(280 P.3d 786)
No. 104,949

CHARLES P. DEEDS, *Appellant*, v. WADDELL & REED
INVESTMENT MANAGEMENT COMPANY, *Appellee*.

—

Opinion filed May 4, 2012.

*Donald N. Peterson, II*, and *Sean M. McGivern*, of Withers, Gough, Pike, Pfaff & Peterson, LLC, of Wichita, for appellant.

*Jeffrey D. Hanslick, James D. Griffin*, and *Curtis R. Summers*, of Husch Blackwell Sanders LLP, of Kansas City, Missouri, and *Jennifer Lepentis*, senior counsel, of Waddell & Reed Financial Services, Inc., of Overland Park, for appellee.

Before BRUNS, P.J., LEBEN and STANDRIDGE, JJ.

LEBEN, J.: In 2007, Waddell & Reed fired Charles Deeds from his position as a sales marketing executive. A year later, Deeds filed an administrative claim (still pending) under the Kansas Wage Payment Act seeking more than $1 million in commissions he said he had earned that hadn't been paid to him. In 2009, Deeds sued Waddell & Reed, alleging that it had fired him in retaliation for exercising his rights under the Kansas Wage Payment Act.

But a person can't be fired in retaliation for exercising rights under the Kansas Wage Payment Act unless the employee has given some indication that he or she is acting under its provisions. Here, Deeds complained about changes in the compensation system but was personally unaware of the Kansas Wage Payment Act and never suggested he was making a claim under its provisions. The equivocal statements Deeds made to his employer are not enough to support a lawsuit alleging that he was fired for exercising rights under the Kansas Wage Payment Act.

Deeds attempts to create other exceptions to the Kansas employment-at-will rule, under which the employer usually can fire an employee at any time for any reason. These attempts fail because Deeds has not cited a clear Kansas public policy to support his position, a requirement for an exception to be made. Deeds also attempts to use the equitable claim of unjust enrichment to proceed in court on his claim for commissions—arguing that Waddell & Reed received an unfair benefit by retaining the commissions, so Deeds should be compensated—but that is contrary to the longstanding rule that an equitable claim is not available when a legal remedy exists. Since Deeds is seeking the same recovery in his administrative claim under the Kansas Wage Payment Act, his equitable claim fails. The district court granted summary judgment to Waddell & Reed, and we find that its judgment was proper.

## FACTUAL BACKGROUND

Waddell & Reed hired Charles Deeds as vice president of marketing and client service for the Southeast region in 1998. There was no employment contract that specified the duration of Deeds' employment, and the parties agree that Deeds was an at-will employee of Waddell & Reed, so the company was free to end Deeds'

employment at any time. Deeds started with a base salary of $77,000, plus commissions based on sales production and ongoing client servicing. The commissions for selling new accounts were 20 percent of revenues in the first year, 10 percent in the second year, 5 percent in the third and fourth years, and 2.5 percent for each year following, which was termed a "trailer" commission. The commission was capped at $50,000 per account per year. The parties disagree about whether Deeds still must be employed by Waddell & Reed to earn the trailer commission.

Waddell & Reed changed the commission schedule effective July 1, 2005. The new schedule phased out the trailer commission so that it no longer would be paid after July 1, 2007. Deeds testified that he believed he had earned these commissions at the time of sale and would be paid these commissions every year as long as the account remained with Waddell & Reed.

Deeds complained about the 2005 commission change to Waddell & Reed's management at least five times. Deeds first complained to Nikki Newton, his supervisor, about what he perceived to be the retroactive nature of the change; Deeds felt that Waddell & Reed was changing an existing compensation agreement. Later in 2005, Deeds complained to Newton's supervisor, John Sundeen, and said he didn't believe "it was right" to change the commission structure. Deeds complained to Sundeen and Newton again in 2006. Later, Deeds admitted he didn't know what the law was under the Kansas Wage Payment Act at the time of these complaints. When Newton asked Deeds what he wanted, Deeds answered, "A fair compensation plan or return of those trailer commissions." In early 2007, Deeds said Newton told him he would take Deeds' request to management and get back to him.

Waddell & Reed fired Deeds on April 9, 2007. Newton told Deeds that Waddell & Reed decided not to change the commission schedule, so the company terminated Deeds' employment because management knew Deeds wasn't going to be happy about the decision. Newton assumed Deeds' largest account and received its commissions. About a year after Deeds was fired, he filed a wage claim under the Kansas Wage Payment Act with the Kansas Department of Labor for more than $1 million. In 2009, a hearing

officer denied Deeds' wage claim. An administrative review of the hearing officer's order was pending as of July 2010.

In 2009, Deeds brought claims against Waddell & Reed under four theories related to his termination and commissions: retaliatory discharge, wrongful discharge, prevention, and unjust enrichment. The district court granted Waddell & Reed's motion for summary judgment August 2, 2010. Deeds has appealed to this court.

ANALYSIS

I. *Deeds Has Not Established Factual Support for a Retaliatory-Discharge Claim under the Kansas Wage Payment Act.*

Deeds' first legal claim is a common-law claim regarding his discharge from Waddell & Reed that he alleges came in retaliation for exercising his rights under the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.* The district court granted summary judgment to Waddell & Reed because no Kansas appellate court had recognized a retaliatory-discharge claim related to the exercise of Kansas Wage Payment Act rights. But the Kansas Supreme Court recognized that cause of action in *Campbell v. Husky Hogs*, 292 Kan. 225, Syl. ¶ 1, 255 P.3d 1 (2011). So the question before us is whether Deeds has provided sufficient factual support to make such a claim.

We first briefly review the rules we must apply to determine whether Deeds has presented a sufficient claim. Questions of law, "including those at the heart of summary judgment decisions," are subject to unlimited review on appeal. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 221, 262 P.3d 336 (2011). Summary judgment is appropriate when there is no genuine issue as to any material fact and when a party cannot prevail as a matter of law even when the court, as required, looks at all facts and inferences that may be reasonably drawn from the evidence in the party's favor. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to prevent summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d

888 (2011). On appeal, the same rules apply. So this court looks at the evidence in a light favorable to Deeds and requires Deeds to come forward with evidence to establish a dispute as to a material fact. Summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence, 291 Kan. at 768, but a party can't avoid summary judgment on the mere hope that something may develop later at trial. *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 559, 205 P.3d 1245 (2009).

Let's start by considering what facts have been established, keeping in mind that we must take the facts in the light most favorable to Deeds. Deeds complained at least five times about the change in the commission schedule that phased out the annual 2.5 percent trailer commission for accounts sold before July 1, 2005. Deeds said that Waddell & Reed had broken its contractual agreement with him, though he never suggested a violation of the Kansas Wage Payment Act since he had no knowledge of its provisions until much later. At one point, when Deeds' supervisor asked what Deeds wanted, Deeds replied, "A fair compensation plan or return of those trailer commissions."

Eventually, Waddell & Reed chose to fire Deeds. According to Deeds, his supervisor told him, "Chuck, I've taken your compensation complaint to management. They have determined not to respond. They know because they're—they—they have determined because you will not be happy [with] their response, that we will—we are going to terminate your employment today." In sum, Deeds was fired because he complained about changes to the terms of his compensation, and his complaints included a claim that Waddell & Reed had breached its contractual obligation to him. But he also told his employer—before he was fired—that he would be satisfied either with a "fair compensation plan" or a return to what he understood was the former contractual agreement.

So has Deeds stated a claim for retaliatory discharge? The essence of a retaliatory-discharge claim is that the employee has been fired contrary to a recognized state public policy. Otherwise, the employment-at-will doctrine controls, and under it an employee may be fired at any time for any reason unless a contract says otherwise. *Campbell*, 292 Kan. at 227; *Goodman v. Wesley Med.*

*Center,* 276 Kan. 586, Syl. ¶ 1, 78 P.3d 817 (2003). The *Campbell* case must be the starting point for our analysis—it is the case recognizing a retaliatory-discharge claim where necessary to protect rights provided by the Kansas Wage Payment Act.

We start with the court's statement of the rule it adopted in *Campbell*: "Kansas law recognizes the tort of retaliatory discharge when an employee is terminated for *filing* a wage claim under the Kansas Wage Payment Act." (Emphasis added.) 292 Kan. 225, Syl. ¶ 1. As stated in the court's syllabus paragraph, this claim protects an employee who is fired for *filing* a wage claim, something that Deeds hadn't even contemplated when he was fired. If that's the extent to which this cause of action exists in Kansas, Deeds' case is an easy one to resolve: He can't bring this claim because he hadn't filed a claim.

There is some support for resolving Deeds' claim that way. The Kansas Supreme Court is required to prepare a syllabus that tells "the points decided in the case," K.S.A. 20-111, and the court faithfully attempts to state its holdings in the syllabus paragraphs. See *State v. Patton*, 287 Kan. 200, 218, 195 P.3d 753 (2008). The Kansas Court of Appeals is, of course, bound by the holdings of our Supreme Court. *State v. Barajas*, 43 Kan. App. 2d 639, 649, 230 P.3d 784 (2010). So one could argue that we may not recognize a retaliatory-discharge claim for the exercise of rights under the Kansas Wage Payment Act beyond what has been recognized in the *Campbell* opinion's syllabus paragraph, which recognized the right only when the employee had filed a claim first.

But such a reading of *Campbell* is too narrow. After all, the court in *Campbell* had no cause to address whether such a claim might be recognized *before* a written wage claim was filed because Campbell alleged that he was fired 1 day after the Kansas Department of Labor had acknowledged receiving his claim. 292 Kan. at 226. We therefore must determine whether Kansas law recognizes a retaliatory-discharge claim at some point before a claim is filed under the Kansas Wage Payment Act.

Two principles set out by the Kansas Supreme Court guide us here. First, the public policy justifying an exception to the normal employment-at-will rule must be so clear that its existence is not

subject to any substantial doubt. *Campbell*, 292 Kan. at 230. Second, in each situation where the public-policy basis for the exception has been a statutory right, the court has noted that it is the exercise of that right that triggers the protection of a retaliatory-discharge claim. Consider *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 85 P.3d 1183 (2004), in which the court recognized a retaliatory-discharge claim when an employee exercised rights under the Federal Employers Liability Act (FELA). The court emphasized that the public policy at issue was based on the worker's use of statutory rights: "Regardless of whether FELA or the Kansas Workers Compensation Act supplies the framework to support an injured worker's pursuit of recovery, the public policy underlying the framework would be undermined if the worker could be fired *for the exercise of his or her statutory right*." (Emphasis added.) 277 Kan. at 556-57; accord *Campbell*, 292 Kan. at 234 (finding a retaliatory-discharge claim "necessary [to carry out public policy] when an employer fires a worker who seeks *to exercise [Kansas Wage Payment Act] rights* by filing a wage claim" [emphasis added]).

We find additional help in determining when a retaliatory-discharge claim might exist before a wage-payment claim has been filed in a recent United States Supreme Court decision, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011). In *Kasten*, an employee brought a retaliatory-discharge claim based on the assertion that the employer had fired him for making a claim under the federal Fair Labor Standards Act. Unlike the Kansas Wage Payment Act, the Fair Labor Standards Act contains a statutory prohibition on employer retaliation against an employee who has "filed any complaint" under the Act. See 29 U.S.C. § 215(a)(3) (2006). But the *Kasten* Court concluded that the statutory policy could be carried out only if oral complaints were considered sufficient to trigger the anti-retaliation provision. 563 U.S. at 10-16. The Court concluded that either an oral or written complaint could be sufficient, but "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an

assertion of rights protected by the statute and a call for their protection." 563 U.S. at 14.

That standard seems a fair one in our situation too. An oral complaint should be sufficient, but only if the complaint is clear enough that the employer would understand that the employee is asserting rights protected by the statute (here, the Kansas Wage Payment Act). For it is the exercise of those rights that leads to recognition of the retaliatory-discharge claim, and application of the public-policy exception should be so clear that its existence is not subject to any substantial doubt.

Under this standard, Deeds has not set out a valid retaliatory-discharge claim. He was unaware of the Kansas Wage Payment Act and made no attempt to claim its protection, let alone notify Waddell & Reed of such a claim before he was fired. Moreover, the statements he made to his employer were equivocal with regard to a potential claim under the Kansas Wage Payment Act: while he complained about the change in the terms of compensation, he said that he could be satisfied either with return of the prior terms or some "fair compensation plan." The latter option does not suggest a claim under the Kansas Wage Payment Act for specific wages due under his employment agreement.

Deeds argues that he can have a valid retaliatory-discharge claim—even without knowing of the Kansas Wage Payment Act or taking any steps toward asserting a claim under that Act. In support of this argument, he cites to three Kansas cases considering retaliatory-discharge claims in the workers-compensation context: *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988); *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 751 P.2d 140 (1988); and *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990). We do not find these cases persuasive in our situation—considering when an employee has a retaliatory-discharge claim for having asserted rights under the Kansas Wage Payment Act—in part because the statutory provisions under which workers-compensation claims are made differ significantly from the provisions of the Kansas Wage Payment Act.

But in both workers-compensation and wage-payment disputes, the applicable statutes provide protection to the employee at all times: an injured worker is entitled to certain benefits, and employees are entitled to prompt wage payment. And the notice that an employee gives the employer is essential in claiming these protections. Employers must provide medical treatment to injured employees, and employees have a right to that treatment—provided that the employee provides notice to the employer of the work-related injury within a short time period after the accident. See K.S.A. 2011 Supp. 44-520 (generally requiring notice within 20 days from the date medical treatment is sought) (effective May 15, 2011); K.S.A. 44-520 (generally requiring notice within 10 days after date of injury) (provision in effect before May 15, 2011). With that early notice, an employee has affirmatively sought the protection of the workers-compensation statute. In *Coleman*, the court noted that medical treatment had been provided by the employer to the employee, indicating that at least some act had been taken by the employee to gain the statute's protection (or at least to accept benefits provided under the statute's provisions). 242 Kan. at 806. In *Chrisman*, the employee notified the employer that he had suffered an injury and that it had been sustained doing tasks at work. 242 Kan. at 773. Thus, in each of these cases, the employee had provided an initial notice that an employer would reasonably understand as a claim for the protection of the workers-compensation statutes. The *Pilcher* opinion does not tell us whether the employee had notified the employer that she claimed her fall on the stairs outside the building where she worked was work-related, nor does it tell us whether she had requested or received any employer-provided medical treatment.

There is language in *Pilcher* stating that it is "wrongful to terminate an employee because of his or her absence due to a work-related injury." 14 Kan. App. 2d at 215. As support for that conclusion, the court cited *Coleman*, a case in which the employer had provided medical treatment to the employee and thus had awareness of a work-related injury and the employee's request for medical treatment. Since the *Pilcher* opinion does not tell us whether the employee had provided notice of the injury to the employer or

whether the employee had requested medical treatment from the employer, we find it of no help in determining the question before us—what sort of notice of a potential claim must be made before an employee may legitimately allege a retaliatory discharge for exercising his or her rights under the Kansas Wage Payment Act.

Deeds also cites to a statement from *Campbell* in which the court said that a retaliatory-discharge claim exists "when an injured worker is terminated for exercising rights under the Kansas Workers Compensation Act" and that recognition of a similar cause of action "is necessary when an employer fires a worker who seeks to exercise [Kansas Wage Payment Act] rights by filing a wage claim." 292 Kan. at 234. Deeds claims that he was "exercising rights" under the Kansas Wage Payment Act and thus should have a claim under the *Campbell* language.

But Deeds' statements were too equivocal to place a reasonable employer on notice that Deeds was making some claim under the Kansas Wage Payment Act or that he intended to do so. Without some clear indication that Deeds was invoking any of the protections provided under the Kansas Wage Payment Act, there can be no claim against the employer for retaliation in response to the employee's exercise of his rights under that statute. See *Chrisman*, 242 Kan. 772, Syl. ¶ 2; *Koopman v. Water Dist. No. 1 of Johnson Co.*, 972 F.2d 1160, 1164 (10th Cir. 1992).

The district court granted summary judgment to Waddell & Reed because no appellate court had yet recognized a retaliatory-discharge claim based on an employee's exercise of rights under the Kansas Wage Payment Act. In this regard, the district court's decision was proven wrong when that cause of action was recognized in *Campbell*. Even so, the district court's ultimate result was correct because Deeds had not provided evidence that he had made a complaint to his employer that would reasonably be understood as an assertion of rights under the Kansas Wage Payment Act and a claim for the protections provided by that Act. When the result is correct, even though the reasons given by the district court were not, we should still affirm the court's ruling. See *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006). We do so here.

II. *Deeds Has Not Established a Case for Recognizing Either of Two New Causes of Action.*

Deeds has also argued for the establishment of two new causes of action. First, he argues that we should declare that an employer cannot fire an employee to avoid paying a commission that has already been earned. Second, he argues that an employer cannot fire an employee to prevent the employee from earning additional commissions. We once again review the matter independently to determine whether there is a valid legal claim corresponding to Deeds' allegations and whether he has provided sufficient factual support for his claim to withstand a summary-judgment motion. Under these standards, Deeds has not established a valid claim on either theory.

In both cases, Deeds contends that Kansas public policy supports the existence of these causes of action. But the Kansas Supreme Court has consistently emphasized, as it reiterated in *Campbell*, that the public policy must be "clearly declared" by the state constitution, a state statute, or court decision, and that the policy must be so definite that its existence isn't subject to substantial doubt. 292 Kan. at 230. If this were not the case, the employment-at-will rule that lies at the heart of Kansas employment law would become the exception, not the rule.

Deeds has not cited any Kansas constitutional provision, statute, or court opinion noting a strong public policy forbidding the firing of an employee for the purpose of avoiding the payment of commissions already earned. We do not believe such a policy exists under Kansas law. If the commissions truly have been earned, the employee could make a claim for them either under the Kansas Wage Payment Act or in a breach-of-contract action. But by firing the employee, the employer would be able to make sure that its exposure was limited only to what it was already legally obligated to pay. One of the benefits of the employment-at-will rule is that an employer can downsize—including the firing of employees to cut payroll and expenses—when business conditions require it, which can allow the company to remain viable until expansion is again possible.

The only case Deeds cites in support of this cause of action is *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1148, 37 Cal. Rptr. 2d 718 (1995). In that case, the California Court of Appeal held that an action could not be dismissed for an employee's failure to state a claim when the employee claimed that he had been fired so his employer could avoid paying him his already earned commissions. The court noted that under its state wage-payment law, the amounts, if already earned, would still be owed, so the motivation attributed to the employer "seems illogical." 31 Cal. App. 4th at 1148 n.3. Yet it held that the action could not be dismissed altogether because the employee had alleged that the employer had terminated him for that specific purpose, which the California court held contrary to the state's public policy. 31 Cal. App. 4th at 1148.

We are unable to agree with the *Gould* court's reasoning, at least under Kansas law. The employment-at-will rule should be discarded only when some clear Kansas public policy requires it, and none does in this situation. If the commissions have already been earned, they are still owed to the employee and may be recovered by him. There is no need to override the normal employment-at-will rule in this situation.

We also note that Deeds himself testified that he didn't believe Waddell & Reed terminated him to avoid paying him earned commissions. He answered "no" when asked whether he was "claiming that the motivation for the termination of [his] employment was an attempt to try to avoid paying [him] earned commissions."

Deeds' second attempt to create a cause of action comes under what's commonly referred to as the doctrine of prevention. Under this doctrine, one party to a contract, Party A, can't escape liability or otherwise derive any benefit by preventing the other party, Party B, from carrying out a "condition precedent"—an activity that must be performed to trigger Party A's contractual duty to Party B. *Morton Bldgs., Inc. v. Department of Human Resources*, 10 Kan. App. 2d 197, 201, 695 P.2d 450, *rev. denied* 237 Kan. 887 (1985). Deeds contends that Kansas law should therefore prevent an employer from firing an employee for the purpose of keeping the employee from earning additional commissions.

Once again, Deeds ignores the policy behind the employment-at-will rule. That rule allows an employer to lessen the compensation it will owe by firing workers or by changing the terms for future compensation unless the employer has entered into an employment contract that requires otherwise.

Deeds has not provided either factual or legal support for the recognition of these new causes of action.

### III. *Deeds' Unjust-Enrichment Claim Is Preempted by his Wage Claim.*

Deeds makes a final claim for unjust enrichment (sometimes called by its Latin name, quantum meruit). Kansas does generally recognize a claim for unjust enrichment where " 'parties agree for the performance of certain work, and the work is done and accepted, and it appears that there was a misunderstanding as to the price to be paid for it.' [Citation omitted.]" *Campbell-Leonard Realtors v. El Matador Apartment Co.*, 220 Kan. 659, 662, 556 P.2d 459 (1976). In such cases, the court may award "reasonable compensation." 220 Kan. at 662.

But a claim for unjust enrichment is an equitable claim, and generally an equitable remedy is not available when an adequate remedy exists under another legal claim. *Nelson v. Nelson*, 288 Kan. 570, 597, 205 P.3d 715 (2009). Here, Deeds has a statutory remedy through his Kansas Wage Payment Act claim, and he seeks the same damages under that claim that he seeks here under unjust enrichment.

As of the time of oral argument before us, Deeds' claim under the Kansas Wage Payment Act remained pending before the Kansas Secretary of Labor. Because Deeds has an adequate statutory remedy, his equitable unjust-enrichment claim is preempted and cannot proceed. See *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1188 (D. Kan. 2011).

The district court's judgment, which granted summary judgment to Waddell & Reed, is affirmed.