NOT DESIGNATED FOR PUBLICATION

No. 122,500

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KAY AUER,
*Appellee*,

v.

WATERWALK INTERNATIONAL, LLC,
CONSOLIDATED HOLDINGS, INC.,
and
JACK P. DEBOER,
*Appellants.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed February 19, 2021. Affirmed.

*Clayton J. Kaiser*, *Todd N. Tedesco*, and *Nathaniel W. Mannebach*, of Foulston Siefkin LLP, of Wichita, for appellants.

*Derek S. Casey* and *Lisa A. McPherson*, of Triplett Woolf Garretson, LLC, of Wichita, for appellee.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: Waterwalk International, LLC (Waterwalk), and an affiliated company, Consolidated Holdings, Inc. (Consolidated), along with Jack DeBoer, chairman of Consolidated and CEO of Waterwalk (collectively the defendants), appeal the district court's denial of their motion to compel arbitration of Kay Auer's employment-related claims. The district court found the arbitration clause in the "side letter" agreement (SLA)

1

for the repurchase of Auer's equity interest in Waterwalk acquired during her employment did not require arbitration of her employment-related claims arising upon her termination. Upon our extensive review of the record, we agree with the district court. We affirm.

FACTS

In October 2014, Auer entered into a contract for employment (the employment agreement) with Waterwalk and Consolidated. The employment agreement specified Auer's salary as chief financial officer (CFO) of Waterwalk and senior vice president of Consolidated. It further described the benefits she would receive and indicated she would have the opportunity to acquire an equity interest in Waterwalk at a later date. The employment agreement contained no provision mentioning arbitration. Auer later signed Waterwalk's operating agreement and the SLA upon her acquiring an equity interest in Waterwalk. Relevant to the issue on appeal, the SLA contained the following long provision requiring arbitration for the repurchase of Auer's equity interest upon termination:

"Repurchase Agreement. If a termination occurs at any time for any reason, . . . you . . . agree to sell to [Waterwalk], and [Waterwalk] agrees to purchase from you . . . , all of your units/interest in [Waterwalk] for its fair market value as if the Company were sold to a willing buyer in such transaction, and liquidated after payment of all debts and obligations, without any minority interest or marketability discounts. If we are unable to agree to the amount after good faith negotiations, we will have an arbitration proceeding in Wichita, Kansas, pursuant to the commercial arbitration rules of the American Arbitration Association. At the beginning of the negotiation each side will submit a simultaneous offer to purchase and sell. If your initial offer to sell is less than the Company's initial offer to buy, then the transaction will be closed at the average of the two amounts. If the Company's offer to buy is less than your offer to sell, then the parties will negotiate in good faith for a period of not less than 90 days. The valuation date will

2

be the last day of the month preceding the last day of employment. Any allocated undistributed taxable income will be added to the offered amount. If arbitration is required, each side will select one arbitrator qualified to value companies engaged in the real estate development and franchising business and these two will select the third arbitrator. The arbitration will determine the value of the units/interest to be repurchased in an amount no greater than the highest initial offer and not less than the lowest initial offer. The repurchase amount will be paid to you in 6 equal consecutive monthly installments without interest, commencing on the date of closing and on the same day of each month thereafter. All amounts due you for unpaid salary and guaranteed payments, or debts and obligations, and all amounts due the Company by you will be paid, settled or offset as part of the repurchase transaction at the closing."

The SLA contained a separate provision for "Compensation," specifying Auer's monthly pay and annual bonuses for 2015, 2016, and 2017. This provision contained nothing indicating arbitration would be required for disputes regarding Auer's compensation.

Auer was terminated in October 2018. In December 2018, Auer filed suit, asserting claims for breach of contract; violation of the Kansas Wage Payment Act (KWPA), K.S.A. 2020 Supp. 44-313 et seq.; and retaliatory discharge. Following their answer to Auer's petition, the defendants moved for judgment on the pleadings and also moved for the district court to stay the proceedings and compel arbitration. The district court denied both motions.

With regard to the motion to compel arbitration, the district court held Auer's claims arose under the terms of the employment agreement and the SLA. The district court further found her claims for breach of contract, retaliatory discharge, and KWPA violations did not arise under the operating agreement. Accordingly, the district court found her claims were not subject to the broad arbitration provision of the operating agreement. Instead, the district court held the only provision requiring arbitration was the

3

repurchase provision in the SLA. However, the district court found it did not apply to Auer's claims because the repurchase provision only required arbitration if a dispute arose as to the repurchase price for Auer's equity interest in Waterwalk.

Additional facts are set forth as necessary herein.

ANALYSIS

Preliminarily, we note Auer moved to have the appeal involuntarily dismissed for lack of jurisdiction. The motion panel of our court denied her motion, finding it was a final order and we had jurisdiction to review the district court's denial of the motion to compel arbitration.

The defendants argue the district court erred in denying their motion to compel arbitration. They assert arbitration was required under the terms of the SLA and the operating agreement. The defendants raise a number of subpoints in their brief. In the interest of brevity and clarity, these points will be addressed out of order.

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015).

> "'An interpretation of a contractual provision should not be reached merely by
> isolating one particular sentence or provision, but by construing and considering the
> entire instrument from its four corners. The law favors reasonable interpretations, and

4

results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citation omitted.]'" *Waste Connection of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

*The SLA's Limited Arbitration Provision Applies only to Auer's Equity Interest.*

The defendants argue arbitration is required under the terms of the SLA. The defendants' argument is unpersuasive. Auer persuasively argues the SLA limits the scope of arbitration to a determination of the value of her equity interest in Waterwalk.

Under the SLA, arbitration would occur if the parties were unable to agree on a price for the repurchase of Auer's equity interest in Waterwalk. The particular section of the SLA in which this is discussed is entitled "Repurchase Agreement." Another section entitled "Compensation" is set forth as a separate provision in the SLA. The compensation provision contains no language indicating arbitration is required for disputes related to Auer's wages or compensation. The repurchase agreement clearly states: "The arbitration will determine the value of the units/interest to be repurchased in an amount no greater than the highest initial offer and not less than the lowest initial offer." This provision contains no language requiring arbitration of Auer's claim for unpaid wages and her other employment-related claims.

The defendants unpersuasively assert any claims for wages were also subject to arbitration because the repurchase agreement stated: "All amounts due you for unpaid salary and guaranteed payments, or debts and obligations, and all amounts due the Company by you will be paid, settled or offset as part of the repurchase transaction at the closing." However, there is nothing in the repurchase provision indicating the amount of "unpaid salary[,] . . . guaranteed payments, or debts and obligations" were matters to be determined in arbitration. Quite simply, this provision merely contemplates payment of anything due to Auer *in addition to* payment for her interest in Waterwalk at closing of

5

the repurchase transaction. In other words, it only specifies *when* she would be paid, not *how* she could seek to be paid for unpaid salary, bonuses, debts, or obligations.

In interpreting the effect of a written instrument, we look first to its plain language. *Peterson*, 302 Kan. at 104. Here, that plain language is clear. The SLA provides arbitration is to "determine the value of the units/interest to be repurchased." Looking further, the language of the repurchase agreement requires the arbitration occur "pursuant to the *commercial arbitration rules* of the American Arbitration Association." (Emphasis added.) Moreover, it provides: "If arbitration is required, each side will select one arbitrator *qualified to value companies engaged in real estate development and franchising business*." (Emphasis added.) As the district court noted, this provision does not require the arbitrators to "have the legal training necessary to interpret statutes or contracts and to understand tort law." The district court further noted as Auer had argued, and the defendants did not dispute, different rules applied under the American Arbitration Association's "Employment Rules and Mediation Procedures."

Given the narrow scope of the arbitration provision—"the value of the units/interest to be repurchased"—the manner in which the arbitration was to be conducted—"pursuant to the commercial arbitration rules"—and the required qualification for the arbitrators—"valu[ing] companies engaged in real estate development and franchising business"—it is clear the SLA only contemplated arbitration of claims related to Auer's equity interest in Waterwalk. This is further underscored by the fact the SLA has a separate provision for Auer's compensation, which provides no requirement for arbitration. Based on the plain language of the SLA, construing its various provisions as a whole, arbitration is only required in the event of a dispute regarding the repurchase of Auer's equity interest in Waterwalk. Here, no such dispute is at issue. Arbitration is not required.

In a somewhat tangential argument, the defendants assert the district court erred when it refused to compel arbitration due to the fact there was no requirement the arbitrators be qualified to deal with matters related to tort law, employment law, or contract interpretation. The defendants characterize this as the district court "not agree[ing] with the parties' chosen procedures for arbitration." To some extent the district court expressed concerns over the fairness of the procedure because by selecting an arbitrator not qualified to deal with Auer's claims, either party could "skew the arbitration against fairness to their opponent." The defendants provide little explanation or support for their argument, which is ultimately premised on their flawed assertion arbitration was required for Auer's employment-related claims.

The district court's discussion of the arbitration procedure was largely directed toward explaining the limited scope of the arbitration clause because the arbitrators were only required to be qualified to value real estate. The district court was ultimately correct in its decision because the plain language of the SLA does not require arbitration of Auer's employment-related claims. To the extent the district court erred by disagreeing with the arbitration procedures, we can still affirm the district court as correct for a wrong reason. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*A condition precedent has not been met.*

The defendants argue the district court erred in holding conditions precedent to arbitration had not been satisfied. Specifically, they argue Auer cannot gain the benefit of barring Waterwalk's request for arbitration because she filed the lawsuit prior to 90 days after the date of her termination. Accordingly, the parties were not able to negotiate in good faith for 90 days regarding the repurchase of Auer's interest in Waterwalk—a condition precedent to arbitration.

To a slight extent, the defendants are correct. Auer cannot benefit from a condition precedent she would have waived by filing suit. See *Deeds v. Waddell & Reed Invst. Mgmt. Co.*, 47 Kan. App. 2d 499, 510, 280 P.3d 786 (2012). The problem with the defendants' argument is the overarching condition precedent to arbitration has not been met and is not at issue in Auer's employment-related claims. Arbitration is only triggered if the parties are unable to agree upon a value for the repurchase of Auer's interest in Waterwalk. And the parties' duty to negotiate in good faith for 90 days prior to arbitration is only triggered if Auer's initial offer to sell is higher than Waterwalk's initial offer to buy. There is no indication in the record or the parties' briefing a dispute exists over resolving Auer's ownership interest in Waterwalk; however, they did announce during oral argument those issues of the case had not yet been developed or resolved.

While the district court may have erred in holding the condition precedent of negotiating in good faith for 90 days had not been met, we can still uphold the district court's decision as correct for a wrong reason. See *Gannon*, 302 Kan. at 744.

*Arbitration is not required for Auer's claims*.

This overarching condition precedent shows why the defendants' interpretation of the repurchase provision of the SLA leads to an absurd result—a result we cannot accept. See *Waste Connection of Kansas, Inc.*, 296 Kan. at 963. If Auer's initial offer to sell was lower than Waterwalk's initial offer to buy, the repurchase price would simply be the average of the two offers. There would be no need to negotiate for 90 days, much less proceed to arbitration. To assume arbitration would still be required would also render meaningless the provision the parties negotiate in good faith for 90 days prior to arbitration. This condition naturally assumes the parties could negotiate a price amongst themselves. After all, what would be the point of negotiating if the parties were going to proceed to arbitration regardless of whether they tried to reach an agreement?

8

Even assuming Auer's unpaid wages and other compensation would be paid as part of the repurchase transaction, there is no obligation in the employment agreement to arbitrate her unpaid wages and other claims. The employment agreement and SLA clearly set forth Auer's monthly compensation and annual bonuses within the relevant timeframe. Whereas the value of Waterwalk's apartment developments, i.e., real estate, may fluctuate over time, there is nothing ambiguous, contingent, or uncertain about Auer's compensation; she is owed what her employment contract provides. As previously stated herein, the employment agreement contains no language whatsoever regarding arbitration, and the compensation provision of the SLA does not mention arbitration.

There is simply no need to arbitrate a matter not specifically subject to arbitration when the lone matter *potentially* subject to arbitration could be resolved without arbitration. On appeal, neither party raises a claim related to the one matter specifically subject to arbitration—the value of Auer's equity interest in Waterwalk. Accordingly, there is no basis to order arbitration of any of her current wage-related claims.

*Auer's claims do not arise under Waterwalk's operating agreement.*

The defendants assert the district court should have ordered arbitration because Auer's claims require interpretation and application of Waterwalk's operating agreement, which contains a broad arbitration provision. The defendants' argument is extremely tenuous and ultimately unpersuasive. The operating agreement provides no method for wages to be paid. The operating agreement provides the manager (DeBoer) may hire company officers, including a CFO, and determine their salaries. The operating agreement sets forth the powers and duties of the CFO, and Auer signed the operating agreement as CFO and as a result of her ownership interest in Waterwalk. The operating agreement did not specify Auer's compensation as CFO, but it did give DeBoer the authority to hire a CFO. Auer's compensation package was set out in the employment agreement and SLA.

With regard to arbitration, the operating agreement contained the following:

> "To the maximum extent permitted by law, the parties mutually consent to the resolution by arbitration, and not litigation, of all claims, causes of action and disputes, *which may arise out of or in connection with this Agreement.* If any dispute arises from or in connection with this Agreement, the parties agree to attempt to resolve such dispute by good faith negotiations prior to the institution of any arbitration proceedings. If the dispute cannot be resolved by such negotiations within 30 days, then any party may commence arbitration proceedings as provided below." (Emphasis added.)

Here, Auer's claims do not "arise out of or in connection with" the operating agreement. In her petition, Auer clearly asserted claims for breach of contract and violation of the KWPA based on the compensation provisions in the employment agreement and the SLA. Auer's wrongful termination claim was based upon her assertion she was fired after telling DeBoer she believed he had violated the KWPA because she had not been paid in accordance with the employment agreement or the SLA. Auer makes no assertion she is entitled to compensation under the operating agreement or that any of its provisions were violated.

The defendants essentially argue that because the operating agreement gave DeBoer the power to hire Auer and determine her salary, her claims for unpaid wages and retaliatory discharge arise under the operating agreement. Quite simply, the defendants are trying to fit a square peg in a round hole. Auer was not hired under the operating agreement; she was hired under the employment agreement. Likewise, Auer's salary was not set forth under the operating agreement; it was set forth in the employment agreement and the compensation provision of the SLA. The defendants' argument is misplaced and unpersuasive.

Since Auer's claims do not arise under the operating agreement, the defendants' arguments regarding the application of the Federal Arbitration Act (FAA) and the Kansas

Uniform Arbitration Act (KUAA) are unpersuasive. The broad arbitration provision of the operating agreement does not apply to Auer's claims. Her claims arise under the employment agreement and the SLA. As previously addressed, the only issue subject to arbitration under the SLA is the repurchase of Auer's equity interest in Waterwalk. Before us, Auer raises no claims related to her equity interest in Waterwalk. Accordingly, the FAA and KUAA do not apply.

In their reply brief, the defendants assert because Auer addresses the operating agreement in her brief, it must be interpreted and applied. The defendants' argument is unpersuasive and unsupported with citation to pertinent authority. "'Simply pressing a point without pertinent authority . . . is akin to failing to brief an issue. "Where [a party] fails to brief an issue, that issue is waived or abandoned." [Citations omitted.]'" *Mid-Continent Specialists, Inc. v Capital Homes, L.C.*, 279 Kan. 178, 191, 106 P.3d 483 (2005).

Affirmed.