IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,179

RACHEL K. PLATT,
*Appellant*,

v.

KANSAS STATE UNIVERSITY,
*Appellee.*

SYLLABUS BY THE COURT

1.

When a district court has granted a motion to dismiss, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom.

2.

Retaliatory discharge is an actionable tort recognized by the common law of Kansas.

3.

The elements of a prima facie claim for the tort of retaliatory discharge in the workers compensation context are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.

1

4.

The nature of a claim is determined from the pleadings and from the real nature and substance of the facts alleged therein.

5.

The Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* (KJRA), does not apply to the civil tort of retaliatory discharge against an administrative agency.

Review of the judgment of the Court of Appeals in an unpublished modified opinion filed November 3, 2014. Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed September 16, 2016. Judgment of the Court of Appeals reversing the district court and remanding with directions is affirmed. Judgment of the district court is reversed.

*Mark Beam-Ward*, of Beam-Ward, Kruse, Wilson & Fletes, LLC, of Overland Park, argued the cause, and *Richard S. Fisk*, of the same firm, was with him on the briefs for appellant.

*Maureen A. Redeker*, assistant general counsel and special assistant attorney general, of Kansas State University, of Manhattan, argued the cause, and was on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  Rachel Platt, whose probationary employment was terminated by Kansas State University (University), sued the institution for retaliatory discharge. She alleged the University fired her as a result of her potential workers compensation claims for work related injuries.

The district court dismissed Platt's lawsuit essentially for lack of subject matter jurisdiction because she failed to exhaust her administrative remedies. It held that Platt

2

was required under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. (KJRA), to first present her retaliatory discharge claim to the University for determination. A panel of the Court of Appeals reversed that dismissal and remanded the case to the district court for further proceedings. We affirm the panel and hold Platt's tort claim is not governed by the KJRA.

FACTS AND PROCEDURAL HISTORY

At the outset, we acknowledge that when a district court has granted a motion to dismiss, "an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom." *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). Accordingly, the following facts are those asserted by Platt in her district court petition.

Platt was hired by the University as an accounting specialist in September 2011, and placed on an initial 6-month probationary period customary for new hires. Platt soon began to experience health problems that she associated with poor air quality in her workspace on campus in Rathbone Hall. After complaining to her supervisor, she learned that her predecessor also had experienced similar health issues and also complained about the environment of the office.

Problems were indeed later determined to exist with the ventilation system in Platt's office. She requested that the University fix the problem, and it arranged a meeting between Platt and an industrial hygienist to further evaluate the issue. Platt's employment was terminated the same day as that meeting. The University claimed the termination was for excessive absences—which Platt alleged were mainly a result of her work-caused health issues. Her firing on March 7, 2012, came 2 weeks before the end of her probationary period.

Platt sued the University and argued her employment termination was wrongful and in retaliation for her potential claims under the Kansas Workers Compensation Act (KWCA). K.S.A. 44-501 *et seq.* She asserted she performed her job satisfactorily and that her firing was causally related to the University's discovery that she had an occupational disease connected with the air quality of her office. She sought damages exceeding $75,000 for loss of income, emotional distress, and costs.

The University filed a motion to dismiss. It argued the district court did not have subject matter jurisdiction over Platt's suit because her claims were governed by the KJRA, which required her to exhaust all administrative remedies made available by the University before judicial review could begin. See K.S.A. 2013 Supp. 77-612.

The court granted the University's motion to dismiss. It held the "administrative process could have accommodated [her] claim and granted to her the fundamental relief sought, reinstated employment."

A panel of the Court of Appeals reversed the district court. In Part A of its opinion, the panel held that, contrary to the University's assertion, Platt was "not seeking a review by the court of the process by which the University—as an agency—performs, or fails to perform, its statutory duties, function, or activities." *Platt v. Kansas State University*, No. 110,179, 2014 WL 6090403, at *4 (Kan. App. 2014) (unpublished opinion). Instead, the panel continued, "[she] seeks redress from the [district] court for a tortious act committed by the University unrelated to the agency's administrative function . . . ." 2014 WL 6090403, at *4.

Consequently, the panel determined that the district court incorrectly defined Platt's action as one of wrongful discharge seeking reinstatement of her employment.

4

According to the panel, Platt actually claimed that the University committed the tort of retaliatory discharge and she sought monetary damages that the University was incapable of awarding. So the panel held that Platt's claims were not governed by the KJRA and jurisdiction was proper in the district court.

In Part B of the panel's decision, it evaluated the case in the alternative, *i.e.*, as if the KJRA had applied to Platt's claims. *Platt*, 2014 WL 6090403, at *5-8. It responded to the University's apparent argument that Platt should have sought relief for her termination from the University's Support Staff Peer Review Committee, which provides terminated employees an opportunity to seek redress before an impartial University committee. After considering the terms of Platt's employment during her probationary period and interpreting relevant statutes governing employment in state agencies, the panel held that the University's procedure was unavailable to Platt as a probationary employee. As a result, the panel held she was not required to show exhaustion of those remedies in order to pursue her tort claims in the district court. 2014 WL 6090403, at *8.

After the panel reversed the district court's dismissal, it remanded the case to that court for further proceedings.

We granted the University review of the panel's decision under K.S.A. 20-3018. Our jurisdiction is under K.S.A. 60-2101(b).

More facts will be added as necessary to the analysis.

5

Issue: *Platt's tort claim of retaliatory discharge is not governed by the KJRA.*

The University argues that the panel erred by holding the University's decision in terminating Platt's employment was not an "agency action" as defined in K.S.A. 77-602(b)(3) and therefore not governed by the procedural requirements of the KJRA. It contends Platt's claim is equivalent to wrongful termination complaints that are normally handled through internal agency administrative procedures. As a result, the University urges us to reverse the panel and uphold the district court's determination that Platt had an appropriate remedy through the KJRA and should have sought reinstatement of her employment there before bringing an action in court.

Platt responds that her claims sound in tort and therefore are not governed by the KJRA. She asks us to reject the University's assertion that all employment decisions by administrative agencies are "agency actions" governed by the KJRA. Consequently, she requests we uphold the panel's determination that her complaint amounted to a suit for retaliatory discharge—which the University was incapable of adjudicating—and affirm its reversal and remand to the district court.

*Standard of review*

This is an appeal from a district court's grant of a motion to dismiss. We review such a legal decision under a de novo standard. *Cohen*, 296 Kan. at 545; *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008). "Additionally, when a district court has granted a motion to dismiss . . . an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom." 296 Kan. at 546. If those facts and inferences state a claim based on plaintiff's theory or any other

possible theory, the dismissal by the district court must be reversed. 296 Kan. at 546. To the extent that resolution of this issue requires this court to interpret the KJRA, review is unlimited. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Discussion*

At the heart of our analysis is our conclusion that the district court misinterpreted the nature of Platt's claims and the relief she sought. The order of dismissal clearly showed the court considered Platt's claim to be one of wrongful termination which simply could be remedied through the University's reinstatement of her employment:

"Plaintiff's foundational premises are: (a) Defendant employed her; (b) Defendant terminated her employment; and, (c) Defendant should not have terminated her employment. For that sequence, the remedial course must focus on the administrative procedure, since the entity that terminated the employment had an administrative procedure for Plaintiff to make the case for reversing the termination decision. . . . [T]he *remedy, restoration of employment, was well within Defendant's authority and experience.*" (Emphasis added.)

Turning first to the remedy Platt seeks, her petition shows she did not seek "restoration of employment." Rather, she requested costs and monetary damages for loss of income and emotional distress "and such other and further relief as the Court may deem just, fair and equitable." Moreover, the court's dismissal cut off any opportunity for Platt to later ask the court for permission to amend her petition to add a claim for punitive damages—a procedural delay required by Kansas law. See K.S.A. 60-3703 ("No tort claim or reference to a tort claim for punitive damages shall be included in a petition . . . unless the court enters an order allowing an amended pleading that includes a claim for punitive damages" after "plaintiff has established that there is a probability that the plaintiff will prevail on the claim.").

7

Turning next to the nature of Platt's claims, she asserts the University's actions constituted retaliatory discharge—an actionable tort recognized in the common law of this state that is discrete from a general discharge of employment. See *Campbell v. Husky Hogs*, 292 Kan. 225, 227-28, 255 P.3d 1 (2011) (collecting cases); *Ortega v. IBP, Inc.*, 255 Kan. 513, 516-17, 874 P.2d 1188 (1994) (employer prohibited from firing employee because of absence caused by work-related injury and potential workers compensation claim). The elements of a prima facie claim for the tort of retaliatory discharge in the workers compensation context are:

> "(1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination." *Campbell*, 292 Kan. at 235 (citing *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n,* 272 Kan. 546, 554, 35 P.3d 892 [2001]).

We recognize that Platt did not explicitly label her claims as retaliatory discharge. But her previously mentioned petition assertions lead to the conclusion that this tort formed the basic nature of her action against the University. See *Bonin v. Vannaman*, 261 Kan. 199, 209, 929 P.2d 754 (1996) ("'The nature of a claim . . . is determined from the pleadings . . . and from the real nature and substance of the facts therein alleged.'").

As for whether Platt's petition has actually met the specific elements of a prima facie claim for retaliatory discharge, we observe she alleged that the University knew she was suffering from ill health as a result of the working conditions it provided. She further alleged that because of this ill health, and in anticipation of her possible workers compensation claim, the University ended her employment. We are required to assume

her petition allegations are true. *Cohen*, 296 Kan. at 546. And we conclude from these allegations Pratt has established a prima facie claim for this tort against the University. See *Campbell*, 292 Kan. at 235.

Now that we have identified the correct nature of Platt's particular claims and determined she has met her prima facie obligation, our next step is to determine whether those claims fall within the purview of the KJRA. This determination is important because the KJRA "establishes the exclusive means of judicial review of agency action." K.S.A. 77-606. And "agency action" is defined as "(1) the whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-602(b).

The University essentially argues that this language of subsection (b)(3) should be read to cover all agency action, even if not connected to the central purpose for which the agency was established—and even if the action rises to the level of tortious conduct. The University further argues that Kansas caselaw supports its interpretation.

We disagree with the University's expansive reading of the KJRA as well as its interpretation of Kansas caselaw. As part of our explanation, we now analyze those appellate court decisions it cites.

In *Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964 (1994), the plaintiffs sued the Kansas Department of Health and Environment (KDHE) and other agencies for civil rights violations under 42 U.S.C. § 1983 (1988) and the torts of malicious prosecution and abuse of process. Their claims arose out of the suspension of their child day care center licenses. The defendants moved to dismiss by arguing that the KJRA was the exclusive remedy for the plaintiffs who had failed to comply with the Act's procedures.

9

The district court granted the motion on that jurisdictional ground as well as ruling on other related motions.

We reversed that court's decision, holding that the KJRA does not apply to the civil tort actions—malicious prosecution and abuse of discretion—against an administrative agency:

"In accordance with K.S.A. 77-603, the KRJA establishes the exclusive means of judicial review of agency action. K.S.A. 77-606. Agency action is defined as '(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function, or activity, discretionary or otherwise.' K.S.A. 77-602(b). *The wrongful acts alleged by the plaintiffs are not licensing and inspection duties of KDHE, they are claims for damages for wrongful acts committed by the agency.* Judicial review is not defined in the KJRA. Black's Law Dictionary 849 (6th ed. 1990) defines judicial review as the '[p]ower of courts to review decisions of another department or level of government' and as a '[f]orm of appeal from an administrative body to the courts for review of either the findings of fact, or of law, or of both.'

"We conclude that the KJRA applies to all proceedings for judicial review of agency proceedings and civil enforcement of agency actions. Here, the Lindenmans are not seeking a review by the courts of KDHE's findings of fact, conclusions of law, or decision. *They filed a combined tort and civil rights claim against KDHE and other defendants. When K.S.A. 77-603 and the definition of judicial review are considered, it is clear that the district court erred in finding the KJRA was the exclusive remedy for the Lindenmans' tort claim against the agency. Because the KJRA does not apply to civil tort actions against an administrative agency*, the grounds for dismissal and summary judgment stated by the district court must now be reviewed." (Emphasis added.) *Lindenman*, 255 Kan. at 619-20.

10

The University also cites *Heiland v. Dunnick*, 270 Kan. 663, 19 P.3d 103 (2001), to support its argument that employment decisions of state agencies are "agency action" which makes the KJRA the exclusive remedy for employees disgruntled by such decisions. Heiland was an auditor employed by the Kansas Savings and Loan Department (KSLD) who was permanently laid off due to agency staff reductions. Because of his status as a laid-off employee, he was entitled to preferential rehiring treatment under an administrative regulation in force at the time. After his layoff, the KSLD was incorporated into the Office of the State Bank Commissioner (SBC).

Heiland accused SBC of failing to provide him the preferential treatment required by the reemployment regulations applicable to SBC's predecessor, KSLD. Alleging his claim "[fell] outside the purview of the KJRA," he proceeded to district court with a declaratory judgment action against the Kansas Bank Commissioner. *Heiland*, 270 Kan. at 668. There he sought the SBC's compliance with the relevant regulations, *e.g*., to accord him preferred hiring status.

Heiland's action was ultimately dismissed by the district court for lack of subject matter jurisdiction on the grounds that his claims were governed by the KJRA and he had failed to follow its procedures, *i.e*., timely filing a petition for district court review of the agency's rejection of his claim. *Heiland*, 270 Kan. at 664-67. The Court of Appeals affirmed the dismissal. *Heiland v. Dunnick*, No. 81,319, unpublished opinion filed February 4, 2000.

This court also affirmed the dismissal and held the agency action Heiland sought to enforce was governed by the KJRA. But on the road to this conclusion, the *Heiland* court made two related acknowledgments that are important to our analysis of the instant case.

11

First, the court confirmed that some claims can support a separate court action against an agency, *i.e.*, independent of the KJRA:

> "The KJRA is the exclusive remedy for all requested relief which an agency can grant under its authority. *Only actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party*.' Douglass v. Kansas State University*, 22 Kan. App. 2d 171, 174, 915 P.2d 782 1996). See *Reifschneider* [*v. Kansas State Lottery*], 266 Kan. [338,] 341[, 969 P.2d 875 (1998)] (quoting this phrase from *Douglass* in finding that the KJRA was sole means of judicial review of acts of the Kansas Lottery)." (Emphasis added.) *Heiland*, 270 Kan. at 668.

Second, the *Heiland* court confirmed that the particular claims contained in *Lindenman* 7 years earlier—violations of civil rights, malicious prosecution, and abuse of process—"were allegations that the KDHE *could not administratively address*. We held that because the claims were *tort claims for wrongful acts*, they did not fall under the KJRA." (Emphasis added.) *Heiland*, 270 Kan. at 668 (citing *Lindenman*, 255 Kan. at 619-20).

With these acknowledgments in mind, the *Heiland* court distinguished between (1) the type of claim brought by Heiland and (2) those brought by the plaintiffs in *Lindenman* and also *Wright v. Kansas Water Office,* 255 Kan. 990, 881 P.2d 567 (1994). As the *Heiland* court noted, *Wright* involved an employee's wrongful termination claim based on the constitutionality of legislation ordering him to be terminated, "an issue which the Kansas Water Office, the administrative agency involved, was not empowered to address." *Heiland*, 270 Kan. at 668-69 (citing *Wright*, 255 Kan. at 992-93.) So in *Wright* the court held the "plaintiff was not required to exhaust administrative remedies *or otherwise comply with the KJRA*." (Emphasis added.) 270 Kan. at 668.

12

The *Heiland* court contrasted the claims in these two cases with those of its own plaintiff's:

"Unlike the tort and constitutional claims in *Lindenman* and *Wright*, Heiland's claims involve the SBC's failure to perform a statutory and regulatory duty benefiting state employees in Heiland's position. The SBC is a 'state agency' . . . [and] Heiland's claim that the SBC's failed to afford him automatic reemployment rights or properly use the reemployment lists involved an 'agency action' as defined by K.S.A. 77-602(b):

. . .

'(3) an agency's performance of, *or failure to perform, any other duty, function or activity, discretionary or otherwise*.'

"Finally, *Heiland's request for relief is one within a state agency's authority to grant*. Both the SBC, as the agency involved, and the Department of Administration, as the agency charged by statute to perform all powers and duties prescribed by law with respect to civil service and personnel administration, *could have addressed Heiland's complaint and provided him with the remedies he sought*." (Emphasis added.) *Heiland*, 270 Kan. at 669.

As a result, the court ultimately rejected Heiland's argument that his claim fell "outside the purview of the KJRA." *Heiland*, 270 Kan. at 668. It concluded that Heiland's "claims are based on an agency action of a state agency *and the relief requested is one that the agency can grant under its authority*," *e.g*., to accord him preferred hiring status. 270 Kan. at 669.

Accordingly, both *Heiland* and *Lindenman* reveal that our previous interpretation of the KJRA does not support the University's position, *i.e*., that all complaints regarding state agency actions must move through the KJRA for adjudication. See also *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 755, 199 P.3d 781 (2009) ("'actionable claims which fall outside the authority of an agency to grant can support a separate action

13

by an aggrieved party'") (quoting *Heiland*, 270 Kan. at 668); *Jones v. State*, 279 Kan. 364, 367, 109 P.3d 1166 (2005) (same); *10th Street Medical v. State*, 42 Kan. App. 2d 249, 254, 210 P.3d 670 (2010) (same).

Stating this conclusion more specifically and applying its principle to the instant case, in *Lindenman* this court held that "the KJRA does not apply to civil tort actions against an administrative agency." 255 Kan. at 619-20. In other words, it ruled that torts are outside the purview of the KJRA. And retaliatory discharge is a tort, particularly when an employee has been fired because of a potential workers compensation claim and absence caused by work-related injury See *Ortega*, 255 Kan. at 516-17. Consequently, just on this simple basis, Platt's cause of action is outside the purview of the KJRA.

The general conclusion that torts are outside the purview of the KJRA has been repeatedly confirmed in Kansas caselaw since *Lindenman* in 1994. See *Heiland*, 270 Kan. at 668 (summarizing *Lindenman*, "because the claims were tort claims for wrongful acts, they did not fall under the KJRA"); *Jones*, 279 Kan. at 367 (citing *Lindenman*, "tort claims for wrongful acts could not be addressed by agency"); see also *Stormont-Vail Healthcare, Inc. v. Board of County Comm'rs*, 2015 WL 3875355, at *5 (2015) (unpublished opinion) (citing *Lindenman*, "KJRA does not apply to 'claims for damages for wrongful acts committed by the agency' outside that agency's usual duties"). *Cf. Campbell*, 292 Kan. at 237 ("This court has previously criticized the allocation of a common-law action to an administrative agency;" issue whether Act's remedies adequate to preclude remedies available under common-law tort of retaliatory discharge) (citing *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 562, 108 P.3d 437 [2004]; *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 208-10, 967 P.2d 295 [1998]; *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 813-14, 752 P.2d 645 [1988]).

14

Especially illustrative of this principle is *Smith v. Bates Technical College*, 139 Wash. 2d 793, 991 P.2d 1135 (2000). As in the instant case, the *Smith* plaintiff sued the college and alleged her termination of employment violated the public policy against discharging an employee in retaliation for exercising a right—in *Smith*, for pursuing a grievance. The trial court dismissed her claim for failure to exhaust her administrative remedies with the Public Employment Relations Commission (PERC), and the Court of Appeals affirmed.

The Washington Supreme Court reversed the dismissal. Although stating its rationale in the context of remedy exhaustion, the *Smith* court reversed because, among other things, plaintiff's wrongful discharge claim was "independent" of any contractual agreement or statute providing administrative procedures for resolving employment disputes:

> "Bates argues that because Smith did not pursue her ULPs [unfair labor practices] with PERC, she did not exhaust her administrative remedies to the extent required by law. Due to this failure Bates asserts the trial court properly exercised its discretion to dismiss Smith's wrongful termination claim. But Bates' argument ignores the fundamental distinction between a wrongful discharge action based in tort and an action based upon an alleged violation of an employment contract or a CBA [collective bargaining agreement]. *As we have explained, the tort of wrongful discharge seeks to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude Smith should not be required to exhaust her contractual or administrative remedies.*" (Emphasis added.) 139 Wash. 2d at 808-09.

In this context, the *Smith* court also ruled that reversal and remand were required because the administrative agency had no clear authority to assess all damages that would be available in a tort action.

"And while RCW 41.56.160(2) authorizes 'such affirmative action as will effectuate the purposes and policy of this chapter, such as the payment of damages and the reinstatement of employees,' *it does not clearly authorize all damages that would be available in a tort action. See Cagle*, 106 Wash. 2d at 919, 726 P.2d 434 (damages for emotional distress recoverable in tort action based on wrongful termination in violation of public policy)." (Emphasis added.) 139 Wash. 2d at 810.

The rationale of the Washington Supreme Court is echoed in Kansas caselaw.

Like our sister court, we have often observed the important purpose embedded in the tort of retaliatory discharge. "The caselaw makes it obvious that Kansas courts permit the common-law tort of retaliatory discharge as a limited exception to the at-will employment doctrine *when it is necessary to protect a strongly held state public policy from being undermined*." (Emphasis added.) *Campbell*, 292 Kan. at 229 (collecting cases). And "By 'public policy,' we have referred to a principle of law which holds that no citizen can lawfully do that which injures the public good." *Coleman*, 242 Kan. at 807.

As in Washington, emotional distress damages, *i.e*., for pain and suffering, are recoverable in retaliatory discharge cases in Kansas. *Campbell*, 292 Kan. at 237 (one pursuing the common-law tort of retaliatory discharge "may seek future lost wages, any other actual damages, and applicable remedies for pain and suffering, as well as punitive damages") (citing *Hysten*, 277 Kan. at 563). And like Washington, in Kansas the tort of retaliatory discharge exists independent of a collective bargaining agreement that may provide protective procedures and some relief to the employee. See *Coleman*, 242 Kan. at 815 (employees covered by collective bargaining agreements who are wrongfully discharged in violation of state public policy, *e.g*., the policy underlying the Workers Compensation Act, have a tort cause of action for retaliatory discharge).

16

Moreover, in *Coleman*, "We did not wish to immunize employers with collective bargaining contracts from 'accountability for violations of state public policy.'" *Hysten*, 277 Kan. at 561 (citing *Coleman*, 242 Kan. at 813) (citing *Midgett v. Sackett-Chicago, Inc.*, 105 Ill. 2d 143, 150, 473 N.E.2d 1280 [1985]). Accordingly, punitive damages are available against the retaliatory employer even in those circumstances. See *Hysten*, 277 Kan. at 563 (citing *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, Syl. ¶ 7, 630 P.2d 186 [1981]).

The *Midgett* decision cited by *Coleman* explained that punitive damages were unavailable under the collective bargaining agreement in that case. But the Illinois Supreme Court concluded that punitive damages nevertheless had a valuable place in the employee-employer relationship—there, in instances of retaliatory discharge for filing a workers compensation claim:

> "Generally, if a union employee's grievance goes to arbitration and the arbitrator does not find just cause for the employer's discharge, the remedy will be simply job reinstatement and full back pay. [Citation omitted.] If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, *but there is no available sanction against a violator of an important public policy of this State*." (Emphasis added.) *Midgett*, 105 Ill. 2d at 150.

Kansas appellate courts frequently have acknowledged the importance of the availability of recovering punitive damages and damages for pain and suffering in retaliatory discharge cases. See, *e.g.*, *Campbell,* 292 Kan. at 237. See also *Murphy,* 6 Kan. App. 2d at 497. As we said in *Hysten*, 277 Kan. at 563, which dealt with the similar issue of whether the Federal Employees Liability Act provided adequate alternate remedies to those available under tort law:

17

"We also do not regard the unavailability of compensatory damages for pain and suffering and punitive damages as trivial. As we recognized in *Coleman,* a retaliatory discharge action, such as the one Hysten brings here, is designed to redress a violation of state public policy. *Coleman*, 242 Kan. at 813. The availability of compensatory damages beyond those designed to eliminate purely economic loss and *particularly the availability of punitive damages can deter such violations.* As Judge Posner said: 'It is a grave matter for an employer to fire an employee for exercising a legal right.' [Citation omitted.] *Deterrence of such conduct is essential.*" (Emphasis added.) 277 Kan. at 563.

We acknowledge that an emphasis upon the availability of these particular remedies could point toward satisfying the KJRA's exhaustion requirement rather than showing that the plaintiff's claim simply is beyond the purview of the KJRA. See, *e.g.*, *Colorado Interstate Gas Co. v. Beshears*, 18 Kan. App. 2d 814, 821, 860 P.2d 56 (1993) (no exhaustion required where no administrative remedy is available or the remedy is inadequate to address the problem). Indeed, in 2009 the legislature amended the KJRA to include express language incorporating part of this exhaustion rule exception to comport with *Beshears* and other Kansas caselaw. See K.S.A. 2009 Supp. 77-612(d) ("the court may relieve a petitioner of the requirement to exhaust any or all administrative remedies to the extent that the administrative remedies are inadequate or would result in irreparable harm"). See also Feighny, *2009 Amendments to the Kansas Administrative Procedure Act and the Kansas Judicial Review Act*, 78 J.K.B.A. 21, 22 (2009).

After all, demonstrating to the court one's exhaustion of administrative remedies under K.S.A. 2015 Supp. 77-612—or even demonstrating that exhaustion of those inadequate remedies is unnecessary under K.S.A. 2015 Supp. 77-612(d)—still acknowledges the KJRA is in play. In other words, it recognizes that a KJRA condition must be met before jurisdictionally being allowed to proceed with a suit asking for court review of an agency action. See, *e.g.*, *Rebel v. Kansas Dept. of Revenue*, 288 Kan. 419, 427, 204 P.3d 551 (2009) ("[I]f a person does not exhaust all available and adequate

18

administrative remedies before filing a petition for judicial review of an agency action, the district court lacks subject matter jurisdiction to consider the contents of the petition."). But we agree with Platt that such a situation is distinct from the one where the KJRA never had any applicability to a case in the first place. See, *e.g.*, *Heiland*, 270 Kan. at 668 (noting in *Wright*, plaintiff not required to exhaust administrative remedies "or otherwise comply with the KJRA").

So an emphasis on remedies for exhaustion purposes would be misplaced in the instant case. The emphasis of our analysis instead is upon the nature of a plaintiff's claim: for Platt, the tort of retaliatory discharge. See *Lindenman v. Umscheid*, 255 Kan. 610, 619-20, 875 P.2d 964 (1994) ("the KJRA does not apply to civil tort actions against an administrative agency"). See also *Heiland*, 270 Kan. at 668 ("'The KJRA is the exclusive remedy for all requested relief which an agency can grant under its authority. Only actionable *claims* which fall outside the authority of an agency to grant can support a separate action by an aggrieved party.'") (Emphasis added.).

Our discussion of the availability of punitive damages and those for pain and suffering primarily demonstrates the importance under Kansas law of the tort of retaliatory discharge in the workers compensation context. It is a common-law tort based upon an employer's violation of strongly held public policy, *i.e.*, a principle which holds no citizen can lawfully do that which injures the public good. *Campbell*, 292 Kan. at 235. As was explained 35 years ago by the first appellate court to recognize this tort in Kansas:

> "The Workmen's Compensation Act provides efficient remedies and protection for employees, *and is designed to promote the welfare of the people in this state*. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. *To allow an employer to coerce employees in the free exercise of*

19

*their rights under the act would substantially subvert the purpose of the act*." (Emphasis added.) *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495-96, 630 P.2d 186 (1981).

The *Murphy* court observed that one of the primary purposes for the imposition of punitive damages is to deter like wrongs from being committed in the future. So it authorized such damages for this newly recognized tort. 6 Kan. App. 2d at 497.

Accordingly, the tort of retaliatory discharge in the workers compensation context would be one of the least likely claims to ever be adjudicated by an administrative agency in Kansas, particularly an agency being asked to punish itself.

The remaining authorities cited by the University are distinguishable and thus unhelpful to its cause. See *Gaskill v. Ft. Hays State Univ.*, 31 Kan. App. 2d 544, 547, 70 P.3d 693 (2003) (court rejected plaintiff's argument that the university was not a state agency subject to the KJRA and held KJRA was his only remedy for his breach of contract claim; upheld dismissal of action for failure to state a claim because of lack of court jurisdiction); *Douglass v. Kansas State University*, 22 Kan. App. 2d 171, 174, 915 P.2d 782 (1996) (plaintiff brought breach of contract action but only sought declaratory judgment and mandatory injunction compelling the university to appoint him as a tenured professor; court upheld dismissal of petition for failing to state a claim because exclusive remedy was under KJRA and the university was empowered to grant all relief requested).

In short, based on the caselaw cited, the KJRA does not govern a challenge to an agency action that claims retaliatory discharge from employment. Accordingly, the University's motion to dismiss should not have been granted on the basis the district court essentially lacked jurisdiction to adjudicate that claim.

Because Platt has demonstrated she is entitled to reversal of the dismissal of her petition and remand to the district court for further proceedings, we need not address the panel's alternative grounds for this action. See *Keiswetter v. State*, 304 Kan. 362, 373, 373 P.3d 803 (2016) (alternate bases for rejecting plaintiff's relief need not be considered by appellate court) (citing cases). Our approach does not mean, however, that the panel's analysis should be considered precedential or persuasive authority.

The judgment of the Court of Appeals is affirmed. The case is remanded to the district court for further proceedings consistent with this opinion.

STEGALL, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 110,179 vice Justice Stegall under the authority vested in the Supreme Court by K.S.A. 20-2616.