No. 103,458

ROBERT L. CAMPBELL, *Appellant*, v. HUSKY HOGS, L.L.C., *Appellee*.

(255 P.3d 1)

Opinion filed May 20, 2011.

*Larry G. Michel*, of Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina, and *Angela Chesney Herrington*, of the same firm, were on the brief for appellant.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This court considers for the first time whether a common-law tort for retaliatory discharge may be brought against an employer when an employee claims he or she was fired for filing a wage claim under the Kansas Wage Payment Act (KWPA), K.S.A. 44-313 *et seq*. The district court dismissed the lawsuit because there was no previously recognized exception to the terminable-at-will doctrine for discharging an employee for filing a KWPA

wage claim. The district court also found there was an adequate remedy available under that Act. We hold the pleadings state a valid claim for retaliatory discharge, and the statutory remedies provided by the KWPA are an insufficient substitute for common-law remedies. As such, we reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert L. Campbell was an at-will employee with Husky Hogs, L.L.C., for about 1 year when he filed a complaint with the Kansas Department of Labor (KDOL) alleging Husky Hogs was not paying him as required by the KWPA. Campbell was fired 1 business day after KDOL acknowledged receiving his claim. Campbell filed this lawsuit in Phillips County District Court alleging Husky Hogs terminated him for pursuing his statutory rights under the KWPA. Husky Hogs denied the allegation.

The company also filed a K.S.A. 60-212(b)(6) motion for judgment on the pleadings. It argued Kansas had not previously recognized a retaliatory discharge claim for alleging KWPA violations and no public policy reasons existed for allowing such a claim now. Campbell conceded the legal issue was one of first impression, but he argued Kansas public policy strongly favors wage earners and compliance with the statutory mandates, so his claim should qualify as an exception sometimes permitted at common law.

The district court granted Husky Hogs' motion. It held Campbell's termination did not violate Kansas public policy, even though it was required to assume the discharge resulted from filing the disputed wage claim. And the district court *sua sponte* determined that even if Campbell had stated a valid common-law retaliatory discharge claim, it was supplanted by the KWPA because that Act provides Campbell an adequate substitute remedy. Campbell filed a timely notice of appeal to the Court of Appeals. This court transferred the case pursuant to K.S.A. 20-3018(c) (transfer on court's own motion).

## ANALYSIS

### *Standard of Review*

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. *Ritchie Paving, Inc. v. City of Deerfield*, 275 Kan. 631, 633, 67 P.3d 843 (2003). An appellate court is required to assume the facts alleged by the plaintiff are true, along with any inferences reasonably drawn from those facts. The appellate court then decides whether the facts and inferences state a claim based on the plaintiff's theory or any other possible theory. *Bland v. Scott*, 279 Kan. 962, 963, 112 P.3d 941 (2005) (quoting *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, Syl. ¶ 1, 35 P.3d 815 [2001], *cert. denied* 537 U.S. 841 [2002]).

### *Exceptions to the employment-at-will doctrine*

Kansas historically adheres to the employment-at-will doctrine, which holds that employees and employers may terminate an employment relationship at any time, for any reason, unless there is an express or implied contract governing the employment's duration. *Morriss v. Coleman Co.*, 241 Kan. 501, 510, 738 P.2d 841 (1987). But there are specific statutory exceptions to this rule, such as terminations based on race, gender, or disability. See K.S.A. 44-1009 (It is unlawful for an employer to terminate or otherwise discriminate against a person because of race, religion, color, sex, disability, national origin, or ancestry or to commit other discriminatory employment practices listed in the statute.).

There are also exceptions recognized by Kansas courts through our case law. Over the past 30 years, exceptions to the at-will doctrine created a common-law tort for retaliatory discharge. These exceptions gradually eroded the general terminable-at-will rule when an employee is fired in contravention of a recognized state public policy. *Ortega v. IBP, Inc.*, 255 Kan. 513, 518, 874 P.2d 1188 (1994) ("[I]t is clear that this state has recognized exceptions to the doctrine of employment-at-will when an employee is discharged in contravention of public policy."); *Anco Constr. Co. v. Freeman*, 236 Kan. 626, Syl. ¶ 5, 693 P.2d 1183 (1985) ("When an

employee is terminated in violation of federal public policy, however, no state cause of action is pled.").

To date, this court has endorsed public policy exceptions in four circumstances: (1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) *et seq.*; and (4) exercising a public employee's First Amendment right to free speech on an issue of public concern. *Anco Constr. Co.*, 236 Kan. at 629 (workers compensation); *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988) (whistleblowing based on good-faith reporting of coworkers or employers infraction pertaining to public health and safety); *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 561, 108 P.3d 437 (2004) (FELA); *Larson v. Ruskowitz*, 252 Kan. 963, 974-75, 850 P.2d 253 (1993) (retaliatory discharge claim when a public employee is terminated for exercising First Amendment rights to free speech on an issue of public concern); see also *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 204, 967 P.2d 295 (1998) (whistleblowing based on good-faith reporting of federal Occupational Safety and Health Act violations); *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 815, 752 P.2d 645 (1988) (employer prohibited from terminating employee because of absence caused by work-related injury and potential workers compensation claim), *overruled on other grounds by Gonzalez-Centeno v. North Central Kansas Regional Juvenile Detention Facility*, 278 Kan. 427, 101 P.3d 1170 (2004); *Cox v. United Technologies*, 240 Kan. 95, Syl., 727 P.2d 456 (1986) (recognizing tort of retaliatory discharge for filing a workers compensation claim but declining to apply it under specific facts of case), *overruled on other grounds by Coleman*, 242 Kan. at 813-15.

*Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), was the first Kansas case recognizing a cause of action for retaliatory discharge. There, plaintiff alleged he was terminated for claiming workers compensation benefits against his employer. The Workers Compensation Act did not contain an express provision making it unlawful to terminate an employee for filing a claim. In fact, the *Murphy* court noted the legislature had considered

amending the law to explicitly permit a retaliation claim on two occasions, but neither amendment passed. 6 Kan. App. 2d at 496. Nevertheless, the Court of Appeals held a strong public policy could be implied from the statutory scheme and that policy needed protection against job-related retaliation. It noted the Workers Compensation Act provided efficient remedies and protections for employees, was designed to promote the welfare of people in the state, and was the exclusive remedy available for injured workers. As such, "[t]o allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purposes of the act." 6 Kan. App. 2d at 496. Four years later, the Court of Appeals' analysis was affirmed by this court in *Anco Constr. Co.*, 236 Kan. at 629, and then reaffirmed in subsequent cases. See *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 560-62, 35 P.3d 892 (2000); *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 132, 815 P.2d 72 (1991); *Coleman*, 242 Kan. at 810; *Cox*, 240 Kan. at 96.

Almost 2 decades after *Anco Constr. Co.*, this court applied the same analysis recited in *Murphy* to recognize that a retaliatory discharge claim under FELA was necessary to protect an employee's exercise of statutory FELA rights. *Hysten*, 277 Kan. at 561. In *Hysten*, a railroad employee filed a retaliatory discharge claim alleging the railroad retaliated against him for filing a tardy claim for work-related injuries. The railroad argued this was not a valid state law retaliatory discharge claim, but was instead dependent upon a federal policy. Disagreeing, this court held:

"Regardless of whether FELA or the Kansas Workers Compensation Act supplies the framework to support an injured worker's pursuit of recovery, *the public policy underlying that framework would be undermined if the worker could be fired for the exercise of his or her statutory right. Such a situation effectively releases an employer from the obligation of the statute.* [Citation omitted.]" (Emphasis added.) 277 Kan. at 556-57.

The case law makes it obvious that Kansas courts permit the common-law tort of retaliatory discharge as a limited exception to the at-will employment doctrine when it is necessary to protect a strongly held state public policy from being undermined. As such,

the first question in analyzing Campbell's claim becomes whether such a state public policy is found within the KWPA.

*The public policy embedded in the KWPA*

The parties dispute what authority may be considered when determining whether a strongly held public policy exists in this state. Husky Hogs argues the legislature must expressly declare a public policy against retaliatory job actions for filing a wage claim under the KWPA before Kansas courts may recognize a common-law tort of retaliatory discharge as an exception to at-will employment. But Campbell argues the test is not so strict and that public policy has been implied from statutory schemes. Campbell's argument is consistent with Kansas case law.

We have stated that courts tasked with determining whether a public policy exists are faced with three situations: (1) The legislature has clearly declared the state's public policy; (2) the legislature enacted statutory provisions from which public policy may reasonably be implied, even though it is not directly declared; and (3) the legislature has neither made a clear statement of public policy nor can it be reasonably implied. *Coleman*, 242 Kan. at 808. We also have held that public policy must be clearly declared by the constitution, statutory enactments, or the courts, and it must be " 'so united and so definite and fixed that its existence is not subject to any substantial doubt.' " *Hysten*, 277 Kan. at 555 (citing *Riddle v. Wal-Mart Stores, Inc.*, 27 Kan. App. 2d 79, 998 P.2d 114 [2000]). We also have acknowledged that while public policy may be determined by both the legislature and the courts, courts must respect legislative expressions when ascertaining whether a public policy exists. *Coleman*, 242 Kan. at 808.

As to this question, both parties refer us to the Kansas federal court decision in *Kistler v. Life Care Centers of America, Inc.*, 620 F. Supp. 1268 (D. Kan. 1985), which suggested there was an express policy declaration governing a wage-related claim. In *Kistler*, the plaintiff alleged retaliatory discharge in federal district court, contending she was fired for testifying against her employer at an unemployment compensation hearing. Such hearings are provided for under K.S.A. 44-701 *et seq*. In determining Kansas public policy

prevented a termination under those circumstances, the court held the legislature had "strongly expressed a policy against allowing employers to interfere with unemployment compensation hearings" by enacting K.S.A. 44-615. 620 F. Supp. at 1269. But the relevant portion of K.S.A. 2010 Supp. 44-615 states:

"It shall be unlawful for any person, firm or corporation to discharge any employee or to discriminate in any way against any employee because . . . such employee may testify as a witness before the secretary of labor, or shall sign any complaint or shall be in any way instrumental in bringing to the attention of the secretary of labor any matter of controversy between employers and employees *as provided herein.*" (Emphasis added.)

It is not immediately clear from the statute what provisions of the labor code are subject to the "as provided herein" language. And since K.S.A. 2010 Supp. 44-615 appears in Article 6 of Chapter 44, one interpretation could be that it applies only to Article 6 claims. The *Kistler* court did not address this ambiguity about the statute's scope but simply assumed K.S.A. 44-615 applied to unemployment compensation hearings, which arise from Article 7. The court then held that K.S.A. 44-615 was an express declaration of public policy, so the plaintiff stated a valid retaliatory discharge claim. 620 F.2d at 1269-70. As a secondary holding, the *Kistler* court also noted that in workers compensation cases Kansas courts had stressed that a retaliatory discharge claim was necessary to preserve the purposes of the Workers Compensation Act. Applying this same rationale to the facts, the *Kistler* court held the same was true in the unemployment compensation case before it. 620 F. Supp. at 1270.

We must decide whether *Kistler*'s extension of K.S.A. 44-615 to an Article 7 unemployment compensation claim as an express legislative statement of public policy against job retaliation was correct. If so, then there is a strong argument Campbell's Article 4 claim seeking his unpaid wage is supported by an express legislative statement of public policy against retaliatory misconduct by employers. The question is whether "as provided herein" only refers to the Article 6 provisions or applies more broadly to other articles within Chapter 44. Answering this inquiry requires statutory interpretation, which is subject to unlimited review. *Weber v. Board of*

*Marshall County Comm'rs*, 289 Kan. 1166, 1175, 221 P.3d 1094 (2009).

To interpret this statute, we first examine its plain language to ascertain legislative intent. If the language is not plain and unambiguous, we employ statutory construction or consult legislative history. *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009). But the statute's language provides no clarity to our inquiry, so we consider the statute's history.

K.S.A. 44-615 was enacted in 1920, L. 1920, ch. 29, sec. 15, along with several other provisions creating a Court of Industrial Relations and conferring certain rights and duties upon it. L. 1920, ch. 29, secs. 1-30. Its duties were later transferred to the Secretary of Human Resources (now Secretary of Labor), when subsequent amendments to K.S.A. 44-615 simply changed the governing body from that court to the Secretary. Compare L. 1920, ch. 29, sec. 15 with L. 1976, ch. 370, sec. 33; L. 2004, ch. 179, sec. 32. In other words, "as provided herein" was originally drafted to apply only to the other provisions adopted in the same bill from 1920. A comparison of the 1920 enactments to Article 6, L. 1920, ch. 29, secs. 3-28, shows they originally included what is now K.S.A. 44-603 through K.S.A. 44-628. Notably, neither the unemployment compensation provisions at issue in *Kistler*, nor the KWPA at issue in Campbell's case, were part of these 1920 statutory enactments.

Given this history, and with nothing else to guide the analysis, we hold that K.S.A. 2010 Supp. 44-615 does not apply to any provision under any section in Chapter 44, except Article 6. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 195, 239 P.3d 66 (2010) (Appellate courts must consider various provisions of an act *in pari materia* to reconcile and bring the provisions into workable harmony if possible.). We find *Kistler's* reliance on K.S.A. 44-615 misplaced in deciding that the legislature made an express statement against job retaliation in the context of an unemployment compensation hearing. But the *Kistler* court's recognition of a retaliatory discharge claim under Article 7 may still be correct under its secondary holding that public policy may be inferred from the statutory right. We address next whether Campbell's retaliatory dis-

charge claim may be implied from the KWPA's statutory scheme. See *Hysten*, 277 Kan. at 556 ("We are attempting to discern the breadth and depth underlying public policy.").

The KWPA was enacted in 1973. L. 1973, ch. 204, secs. 1-16. It is an expansive and comprehensive legislative scheme that is broad in its scope and the rights created for Kansas workers to secure unpaid wages earned from their labors. See K.S.A. 44-313 *et seq*. It is applicable to most Kansas employers. See K.S.A. 44-313(a). It requires, among various other provisions, that employers promptly pay wages and benefits (K.S.A. 2010 Supp. 44-314; K.S.A. 44-315). It also permits specific damages awards for willful nonpayment (K.S.A. 44-315); controls and limits wage withholdings (K.S.A. 2010 Supp. 44-319); prohibits waivers of the rights created (K.S.A. 44-321); and mandates that the Secretary of Labor enforce and administer the KWPA's provisions through administrative proceedings, compulsory process to compel witness attendance and document production, and permits application to the district courts for citations in contempt (see K.S.A. 44-322; K.S.A. 2010 Supp. 44-322a). The Secretary of Labor is expressly authorized to adopt such rules and regulations as are deemed necessary to accomplish the KWPA's purposes. K.S.A. 44-325.

In *Burriss v. Northern Assurance Co. of America*, 236 Kan. 326, 333, 691 P.2d 10 (1984), *cert. denied* 474 U.S. 821 (1985), this court commented on the safeguards Kansas law has extended to wages and benefits earned by its workers, noting:

"Throughout the history of this state, the protection of wages and wage earners has been a principal objective of many of our laws. See, for example, K.S.A. 60-2307, originally enacted as G.S. 1868, ch. 38, § 6, providing that otherwise exempt personal property shall not be exempt from attachment or execution for wages; K.S.A. 44-312, enacted in 1901, giving preference to the payment of wages in the case of receiverships or assignments for the benefit of creditors; the statute restricting garnishment of wages, K.S.A. 60-2310, which reflects the rationale of G.S. 1868, ch. 80, § 490; and the wage payment act, K.S.A. 44-313 *et seq.*, enacted in 1973. K.S.A. 40-3103, like the statutes mentioned above, gives preference to wage earners, in order that they and the families dependent upon them are not destitute."

This language was repeated recently in *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 644, 154 P.3d 1080 (2007),

in recognition of what the *Coma* court characterized as "the strong and longtime Kansas public policy of protecting wages and wage earners." In *Coma*, we held that denying an undocumented worker access to KWPA's statutory mechanisms for enforcing an employment contract would "directly contravene the public policy of the State of Kansas." 283 Kan. at 645.

This court has recognized retaliatory discharge claims in different circumstances, including those in which employees are discharged for exercising a statutory right. *Hysten*, 277 Kan. at 561 (FELA); *Anco Constr. Co.*, 236 Kan. at 629 (workers compensation). Campbell's petition, which alleges an adverse job action against him for pursuing his statutory right to payment of earned but unpaid wages, clearly fits within this type. And it is meaningful that this statutory right relates to employment because it dovetails with much of our prior case law. For example in *Hysten*, which concerned the railroad employee terminated after filing a FELA claim for a work-related injury, this court held:

"The design and language of the Kansas Workers Compensation Act and the logic of *Murphy*, 6 Kan. App. 2d 488, persuade us that Kansas has a 'thoroughly established' public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them for exercising their rights. It matters not that the vehicle for that exercise is a federal rather than a state statutory provision." 277 Kan. at 561.

That principle is applicable to the KWPA. We hold the KWPA embeds within its provisions a public policy of protecting wage earners' rights to their unpaid wages and benefits. And just as we found a common-law retaliatory discharge claim when an injured worker is terminated for exercising rights under the Workers Compensation Act, we find such a cause of action is necessary when an employer fires a worker who seeks to exercise KWPA rights by filing a wage claim. To do otherwise would seriously undermine the public policy and the protections afforded by the KWPA. *Cf. Hysten*, 277 Kan. at 556-57.

*Campbell's petition states a claim for relief*

Having determined a cause of action exists for retaliatory discharge based on the pursuit of a wage claim under the KWPA, we

must next consider whether Campbell states such a claim. In his petition, Campbell alleges: (1) He filed a complaint with the KDOL alleging he was not being paid properly under the KWPA; (2) Husky Hogs terminated him after he filed the complaint only 1 business day after Campbell received acknowledgement that his complaint was filed; (3) the termination was in retaliation for filing the complaint with the KDOL; (4) Campbell suffered damages, including lost wages, as a result of being terminated; and (5) his termination violated an important public policy under Kansas law. We resolved the public policy factor above.

In *Rebarchek*, this court held that the elements for a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination. 272 Kan. at 554.

As noted above, in reviewing a dismissal under K.S.A. 60-212(b)(6), appellate courts assume the facts alleged by plaintiff are true, along with any inferences reasonably drawn from them. *Bland*, 279 Kan. at 963. Given the similarities between alleging retaliatory discharge for filing a workers compensation claim and filing a KWPA claim, we find the allegations stated by Campbell sufficient to avoid dismissal at this early stage in the proceedings under our standard of review.

### KWPA provides an inadequate substitute remedy

In addition to finding Campbell had not stated a claim upon which relief may be granted, the district court *sua sponte* held that the remedies available for violating the KWPA provided an adequate substitute remedy for Campbell's common-law retaliatory discharge claim and dismissed the case on that alternative basis. Campbell disagrees, arguing the KWPA can only address his wage claim and noting the common-law remedies traditionally available

for a wrongful termination claim, including punitive damages, are not permitted in the administrative action before the Secretary.

Under the alternative remedies doctrine, a state or federal statute could be substituted for a state retaliation claim—if the substituted statute provides an adequate alternative remedy. *Hysten*, 277 Kan. at 561; *Flenker*, 266 Kan. at 202-03. Therefore, the issue is whether the statutory remedy under the KWPA is adequate and thereby precludes the common-law remedy sought by Campbell.

In *Hysten*, when deciding whether FELA provided an adequate substitute remedy for the plaintiff's retaliatory discharge claim, this court examined whether the FELA and common-law actions were subject to the same procedures, allowed similar levels of claimant control, and made available the same damages. 277 Kan. at 562-64. We stated:

> "We also do not regard the unavailability of compensatory damages for pain and suffering and punitive damages as trivial. As we recognized in *Coleman*, a retaliatory discharge action, such as the one Hysten brings here, is designed to redress a violation of state public policy. [Citation omitted.] The availability of compensatory damages beyond those designed to eliminate purely economic loss and particularly the availability of punitive damages can deter such violations. As Judge Posner said: 'It is a grave matter for an employer to fire an employee for exercising a legal right.' [Citation omitted.] Deterrence of such conduct is essential." 277 Kan. at 563.

Similarly, the disparate processes and dissimilar remedies make it untenable to find the KWPA claim is an adequate substitute remedy for Campbell's common-law retaliatory discharge claim. First, as discussed above, the district court's holding is problematic because the wage claim redresses a different harm. The KWPA action and its statutory remedies relate to Campbell's claim that Husky Hogs did not pay him all earned wages. But the retaliatory discharge claim would redress the employment termination. Since these causes do not address the same wrong, it is difficult to conclude the legislature supplanted the retaliatory discharge claim with KWPA.

But just as importantly, Campbell does not receive the same process under his KWPA claim as he would in litigating the wrongful termination claim. KWPA permits the Secretary of Labor to

hold hearings and investigate alleged violations of the act. K.S.A. 44-322; K.S.A. 2010 Supp. 44-322a. The Secretary or presiding officer determines whether the unpaid wage claim is valid, how much the employer owes in unpaid wages, assesses applicable damages, and may seek a contempt order in district court if the employer refuses to obey the Secretary's order. K.S.A. 44-322; K.S.A. 2010 Supp. 44-322a. But neither party in an administrative action has a right to a jury trial and the Secretary has considerable statutory discretion both to determine whether a dispute exists and to control the investigation of that dispute. See K.S.A. 44-322; K.S.A. 2010 Supp. 44-322a. Regarding damages under the KWPA, the Secretary has authority to award the unpaid wages and damages for willful nonpayment, but they are limited to 1 percent of the unpaid wages for each day payment is not submitted up to 100 percent of the unpaid wages. K.S.A. 44-315.

While these statutory remedies may adequately compensate Campbell for his unpaid wage claim, it is difficult to see how they adequately compensate him for wrongful termination or provide a better deterrent for the retaliatory misconduct alleged. Retaliatory discharge is a tort. A tort is a breach of duty imposed by law. Under common law, Campbell may seek future lost wages, any other actual damages, and applicable remedies for pain and suffering, as well as punitive damages. See *Hysten*, 277 Kan. at 563.

This court has previously criticized the allocation of a common-law action to an administrative agency. See *Hysten*, 277 Kan. at 562; *Flenker*, 266 Kan. at 208-10; *Coleman*, 242 Kan. at 813-14. In this case, we hold the KWPA is not an adequate substitute remedy for Campbell's common-law retaliatory discharge claim. The district court erred in so finding.

Reversed and remanded for further proceedings.