FILED
United States Court of Appeals
Tenth Circuit

May 31, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOCCO D. BAILEY,

    Plaintiff - Appellant,

v.

AMERICAN PHOENIX, INC.,

    Defendant - Appellee.

No. 17-3190
(D.C. No. 5:16-CV-04044-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

In this employment case for retaliatory discharge, Jocco D. Bailey appeals pro se

from a district court order that granted summary judgment to his employer, American

Phoenix, Inc. (API).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Bailey worked for roughly a year and a half as an electro-mechanical technician at

API's Topeka, Kansas, chemical packaging plant.  He was terminated on September 1,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2015, for four reasons: (1) refusing to report to work; (2) poor job performance; (3) disrespecting an office manager; and (4) refusing to comply with a medical exam.

In regard to Bailey's refusal to report to work, API noted that on two occasions when Bailey was "on an on-call status" for plant repairs, he refused a supervisor's requests to come in and address ongoing mechanical issues. R., Vol. II at 143. The first time, Bailey refused to report because he felt the issue was "not a big deal," and the second time he simply hung up the phone after telling the supervisor to contact an out-of-state employee. *Id.*

As for job performance issues, API noted that Bailey had been disrespectful to vendors and had falsely reported that a "dust collector" machine was working properly. Indeed, in April 2015, API's national plant manager, Jeff Menard, observed Bailey "chase[ ] behind [a] vendor and verbally berate[ ] him," *id.* at 122, and on August 4, 2015, Menard told Bailey "he should be terminated" for lying about the dust collector, *id.* at 123.

The third termination reason involved Bailey's August 21 encounter with the Topeka plant's office manager, Donna Younger. Bailey asked Younger about the process for reporting workplace incidents. According to Younger, after she described the process, Bailey "kept talking loudly about how the Feds were doing an investigation and the Feds were gonna love this." *Id.* at 136 (internal quotation marks omitted). Bailey's behavior drew a crowd and so upset Younger that she had to leave work for the day.

Following these three incidents, on August 26, Bailey informed API that he had contacted the U.S. Occupational Safety and Health Administration and the Kansas

Departments of Labor and Health and Environment to complain of unsafe working conditions. In particular, Bailey complained to the agencies of "the unsafe dust collector procedure; the noncompliance with the handling, disposal, and containment of the chemicals . . . in the plant[,]" and "[t]hat we were sick in there." *Id.* at 85.

The fourth and final incident API cited to support Bailey's termination occurred on August 27. On that date, Bailey reported to API's Topeka plant manager, John Butler, that he had become ill as "a result of exposure to chemicals at API." *Id.* at 131. When Butler began completing the paperwork necessary for submitting a worker's compensation claim and then offered to take Bailey to the emergency room, Bailey "became irate," said "fuck you," and left Butler's office. *Id.* Nevertheless, Butler completed the paperwork and scheduled a next-day appointment for Bailey at a "WorkCare Center." *Id.* On August 28, a doctor from the center called Butler and reported that Bailey had provided a urine sample as requested, but Bailey then dumped it out upon learning that the sample was not "to see if chemicals were making [him] sick," *id.* at 179, but rather, to test for drug/alcohol use. The doctor reported that Bailey then left the center.

API terminated Bailey five days later. According to API's human-resources manager, Linda O'Mara, the decision to terminate Bailey was made "[a]fter consultation with API management and legal counsel" based on "the culmination of multiple instances of unprofessional conduct and behavior over the previous two years by Mr. Bailey." *Id.* at 115.

Bailey retained counsel and sued API in federal court for wrongful termination. He invoked the court's diversity jurisdiction and alleged that API violated Kansas law barring retaliation against an employee for whistleblowing or filing a worker's compensation claim. After Bailey's counsel withdrew, Bailey continued his case pro se, filing a motion for summary judgment. API also sought summary judgment.

The district court granted API's motion and denied Bailey's motion, concluding that Bailey had failed to raise a triable issue of fact as to whether API's reasons for the termination were pretextual. Bailey now appeals.

## DISCUSSION
### I. Standards of Review

We review de novo a grant of summary judgment. *Owings v. United of Omaha Life Ins. Co.*, 873 F.3d 1206, 1212 (10th Cir. 2017). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016) (internal quotation marks omitted). We construe Bailey's pro se filings liberally, but we do not serve as his advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II. Retaliation

Kansas follows the employment-at-will doctrine, "which holds that employees and employers may terminate an employment relationship at any time, for any reason, unless there is an express or implied contract governing the employment's duration." *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 3 (Kan. 2011). It is against Kansas public policy, however, for an employer to discharge an employee in retaliation for whistleblowing or filing a worker's compensation claim. *Id.* at 3-4. Thus, Kansas allows retaliatory-discharge claims in those instances. *Id.* at 4.

Burden-shifting analysis applies to these claims. *See Shaw v. Sw. Kan. Groundwater Mgmt. Dist. Three*, 219 P.3d 857, 862 (Kan. Ct. App. 2009) (whistleblowing); *Rebarchek v. Farmers Coop. Elevator*, 35 P.3d 892, 898-99 (Kan. 2001) (filing a worker's compensation claim). First, the employee must establish a prima facie case of retaliatory discharge based on clear and convincing evidence. *Shaw*, 219 P.3d at 862. If that standard is met, the employer must then "present evidence that the employee was terminated for a legitimate reason, at which point the burden shifts back to the employee to provide evidence that the reason given by the employer was pretextual." *Id.*

There is no dispute that Bailey has established a prima face case of retaliation and that API has "articulate[d] . . . legitimate, nonretaliatory reason[s] for terminating [him]," *Gonzalez-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility*, 101 P.3d 1170, 1177 (Kan. 2004). Thus, our focus is on whether Bailey has raised a triable issue of pretext.

5

Pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (internal quotation marks omitted). Where, as here, an employer cites multiple legitimate reasons for a termination, courts typically require the employee to raise a triable issue of pretext as to each reason unless the reasons are all intertwined or one reason is so clearly pretextual that it casts "substantial doubt on" the others. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). We conclude that Kansas courts, if confronted with a pretext issue involving multiple termination reasons, would follow the approach described in *Tyler. See Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1196 (10th Cir. 2012) (observing that Kansas follows the federal burden-shifting analysis for employment cases). Applying that approach in this case, we conclude that API's termination reasons are independent of each other, and therefore, pretext must be shown as to each reason.

Bailey first attempts to derive pretext from the fact that he was terminated soon after contacting federal and state authorities and submitting a worker's compensation claim. But temporal proximity is insufficient by itself to create a triable issue of pretext. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 n.6 (10th Cir. 2007) (applying Kansas law). Indeed, the timing of Bailey's protected activities and his termination has no bearing on at least one of API's termination reasons—poor job performance—which

6

predated the protected activities and resulted in Menard's warning to Bailey that he should be terminated.

Next, Bailey asserts that API's job-performance and refusal-to-report-to-work (first occurrence) reasons are pretextual because they are "plagued with inconsistencies." Aplt. Opening Br. at 6, 8. This assertion fails primarily because Bailey's citations to the record are unsupportive. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Moreover, "in evaluating alleged pretext we must consider the facts as they appeared to [API]." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1268 (10th Cir. 2015). Thus, to the extent Bailey believes API's reasons are inconsistent with his own opinion of his work practices, he cannot create a triable issue of fact as to pretext. *See id.* ("We will not second-guess an employer's business judgment or replace its opinion of best practices with either an employee's opinion or our own.").

Bailey asserts that the refusal-to-report-to-work (second occurrence) and refusal-to-comply-with-medical-exam reasons are "plagued with fatal contridictions and falsifications." Aplt. Opening Br. at 12, 15. He explains that his second refusal to report to work was the result of an unspecified warning from Butler not to clock in just to tell the shift supervisor to call "the designated I.T. employee." *Id.* at 12. This explanation appears unsubstantiated in the record, and thus "carr[ies] no probative weight," *Bones,* 366 F.3d at 875. Further, Butler testified that the work problem requiring Bailey's presence involved "a mechanical issue with the C-line," and it was Bailey's "duty to report to work to assess the situation and diagnose the problem." R., Vol. II at 132.

7

Again, "[w]e will not second-guess an employer's business judgment or replace its opinion of best practices with either an employee's opinion or our own." *Bennett*, 792 F.3d at 1268.

As for Bailey's refusal to comply with the medical exam, he argues that he could not have been "insubordinate" because API did not "compel[ ] [him] to take" the exam. Aplt. Opening Br. at 17. The precise nature of Bailey's argument in regard to pretext is unclear. API maintains a policy requiring employees who claim a workplace injury to undergo post-injury drug/alcohol testing. The policy further provides that refusal to comply may result in termination and the denial of worker's compensation benefits. Bailey acknowledged that policy in writing. Bailey has not shown pretext.

Next, Bailey asserts that API's reliance on his August 21 verbal outburst toward Younger is pretextual because (1) API conceded that the outburst involved whistleblowing, but it nevertheless maintained that Bailey did not report his contact with federal and state authorities until August 26; and (2) API did not produce evidence corroborating Younger's characterization of the incident. The record does not, however, indicate that API conceded a contradictory whistleblowing report date. Rather, the record shows that API consistently claimed that Bailey's behavior toward Younger was "threatening and intimidating," and that it was grounds for termination. R., Vol. II at 34. As for Younger's characterization of Bailey's conduct, Bailey has provided no contrary evidence. His assertion on appeal that he was acting in a "calm manner," Aplt. Opening Br. at 19, is not supported by his record citation, and it carries no probative weight, *Bones*, 366 F.3d at 875.

8

Finally, Bailey suggests that pretext is shown by API's failure to fire employees who violated API policies but who did not engage in whistleblowing or filing a worker's compensation claim. Granted, disparate treatment of similarly situated employees can supply a reasonable inference of pretext. *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). But for Bailey to be similarly situated, the other employee must be "held to the same standards, and [have run] afoul of those standards to at least the same degree." *Id.* Bailey has identified no employee comparable in terms of misconduct.

## CONCLUSION

We affirm the district court's judgment. We grant Bailey's motion to proceed in forma pauperis, and we remind him of his obligation to continue making partial payments until the entire appellate filing fee is paid.[1] Finally, we grant Bailey's motion to amend his reply brief.

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

[1] At the time Bailey filed this appeal, he was incarcerated, and therefore, he is subject to the fee mandates of the Prisoner Litigation Reform Act. *See Brown v. Eppler*, 725 F.3d 1221, 1230 (10th Cir. 2013).