NOT DESIGNATED FOR PUBLICATION

No. 122,695

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KAREN MALEY,
IN HER CAPACITY as COFFEY COUNTY TREASURER,
and INDIVIDUALLY,
*Appellant*,

v.

BOARD OF COUNTY COMMISSIONERS OF COFFEY COUNTY, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Coffey District Court; ERIC W. GODDERZ, judge. Opinion filed September 17, 2021. Affirmed.

*J. Phillip Gragson* and *Kathleen S. Harvey*, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, L.L.P., of Topeka, for appellant.

*Terelle A. Mock*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before MALONE, P.J., ATCHESON, J., AND BURGESS, S.J.,

ATCHESON, J.: We have been asked to referee a dispute over how an elected board of county commissioners should set the salary for the county treasurer—another duly elected public official of equal stature in the government hierarchy. Few legal rules guide us in the task. If that weren't challenging enough, the Coffey County officeholders had agreed to an oddity in paying the county treasurer. After becoming treasurer, Plaintiff Karen Maley rejected that convention, and the county commissioners reduced her salary. Maley sued the commissioners. The Coffey County District Court entered summary

1

judgment against her, and she has appealed. We conclude Maley received what the applicable legal rules require: reasonable compensation as county treasurer. She has failed to offer arguments undercutting the district court's ruling, so we affirm.

FACTUAL AND HISTORICAL PREDICATE FOR THIS LITIGATION

To place the appellate issues in context, we need to outline both the historical relationship between boards of county commissioners and county treasurers generally and the peculiar salary arrangement the Coffey County Board worked out with Maley's predecessors. County treasurers stand for election and serve four-year terms. K.S.A. 19-501. In that respect, they are ostensibly coequal public officers with county commissioners. K.S.A. 2020 Supp. 19-202 (election of commissioners). The county treasurer is not in any traditional sense an employee of the board of county commissioners and cannot be suspended or terminated at the will of a board majority.

But county commissioners control the purse strings and approve budgets for county departments and agencies, including the county treasurer's office. Embedded in that prerogative is the "administrative" authority to set the salary for the treasurer as part of that office's budget. *Weber v. Board of Marshall County Comm'rs*, 289 Kan. 1166, 1176, 221 P.3d 1094 (2009) ("Setting a county official's salary is an administrative action" entrusted to the board.) Although the origins of that authority may be murky, the court's recognition of it is not.

The parties have cited no statutory or case authority outlining criteria or parameters for a board of commissioners in determining a treasurer's salary. We have found none. The implications from *Weber* and the cases it cites suggest the salary typically is to be fixed annually as part of the office's yearly budget. It is unclear if the salary is in some sense negotiable between the board and the treasurer. We are confident, however, the salary must be objectively reasonable. 289 Kan. at 1183 (board of

2

commissioners must set salary "to ensure the county treasurer [is] fairly paid for county work"). But that says in a positive form nothing more than the board cannot set an unreasonably low salary (or an inexplicably high one). And it is hardly a secret that the salaries for treasurers vary widely from county to county, as do the size of their offices and the magnitude of their fiscal responsibilities.

In addition to their other duties, county treasurers collect and remit to the State vehicle registration fees. K.S.A. 8-145(b). That is considered a state duty or task. Under K.S.A. 8-145(b), a county treasurer may receive a small amount from each registration up to a maximum of $15,000 annually as compensation for the performance of that work for the State. The retained amount goes to the treasurer at the end of the year and varies from year to year if it is less than the statutory cap. During the year, as provided in K.S.A. 8-145(b), that amount and money to cover expenses the treasurer's office incurs in collecting the fees are paid into a special fund. Whatever is left in the special fund at year's end should then be transferred to the county's general fund.

County commissioners cannot use the compensation the treasurer receives under K.S.A. 8-145(b) to offset the salary due the treasurer for work done on behalf of the county. *Weber*, 289 Kan. at 1182. In other words, the board must set a salary compensating the treasurer for his or her county work independent of the amount the treasurer may receive through K.S.A. 8-145(b) for collecting registration fees.

A long-serving predecessor to Maley as Coffey County Treasurer didn't like the reimbursement under K.S.A. 8-145(b) because it was an uncertain lumpsum available only at end of the year. So she and the Coffey County Board of Commissioners agreed that she would not take the reimbursement from the special fund, so the money would be go into the county general fund and, in return, the commissioners set a higher salary for her in the budget—a known amount paid to her in regular intervals over the course of the year. The district court found the arrangement had been in place continuously for about

3

30 years. Then came Maley, who assumed the job in February 2017 after serving as a deputy treasurer for years.

Maley's starting salary was $59,400—the same as the departing treasurer received. During the budgeting process in April 2017, the board increased her salary to $62,588. For summary judgment purposes, the parties agree that Maley did not know about the salary arrangement her predecessors had with the board. Near the end of the year, Maley submitted a voucher for $10,161.20 reflecting the amount due her under K.S.A. 2017 Supp. 8-145(b) for the vehicle registration fees her office collected. The commissioners realized they and Maley had a serious misunderstanding about her compensation. Their realization apparently sparked more than one barbed discussion with Maley. They informed her of the deal with the preceding treasurers and urged her to do likewise.

When Maley refused, she was met with threats of political retribution and of prominent media coverage portraying her as greedy and intractable. For summary judgment purposes, the district court found Commissioner Fred Rowley and Commissioner Don Meats made statements of that tenor when each separately spoke to Maley in late 2017 with County Attorney Christopher Phelan in attendance. Maley, nonetheless, insisted on being paid the statutorily required portion of the registration fees, and the board complied.

The board convened on January 29, 2018, and voted to reduce Maley's salary going forward to $50,000 plus the state compensation for registration fees accruing under K.S.A. 2017 Supp. 8-145(b). The board ostensibly relied on a hastily prepared survey of compensation paid treasurers in 14 counties contiguous with Coffey County or otherwise labeled "comparable." In its summary judgment ruling, the district court characterized the review as "an informal salary survey." The comparison did not appear to consider the number of employees in the treasurers' offices or the amount of money the offices were

4

responsible for. The survey suggested $46,939.39 would be an appropriate salary for Maley.

The board also relied on an off-the-cuff response Maley provided during a commission meeting in November 2017 that she spent about 80 percent of her time on county business and 20 percent on state business. Maley later qualified that statement by pointing out that the state work benefited Coffey County because some of the vehicle registration fees are ultimately shared with local governmental units. But she never offered an alternative percentage breakdown of her worktime. The board further made a point of Maley being a newcomer to the office, although she had worked as a deputy treasurer for years and the commissioners initially set her compensation at the same level as her immediate predecessor and, thus, with no reduction for her purported inexperience.

In response to the board, Maley countered that $62,588 plus the amount received from the registration fees would be fair compensation, given the size of the treasurer's office and the county's tax base, including the Wolf Creek power plant. Maley's counter would have substantially increased her total renumeration over what her immediate predecessor received.

The board increased Maley's salary to $51,000 in April 2018 during the countywide budgeting process. In advance of the budgeting, Maley had submitted a written request for a salary of $63,840 plus compensation from the registration fees.

Maley filed this action in January 2019 seeking a declaratory judgment that the board had impermissibly reduced her salary and continued to inadequately compensate her as county treasurer. She also sought relief on other grounds, including violation of the Kansas Wage Payment Act, K.S.A. 44-313 et seq. After the parties undertook discovery, the board filed a motion for summary judgment, relying largely on a written stipulation of facts augmented with some additional evidentiary materials. Maley duly submitted a

5

memorandum opposing the motion. The district court filed a lengthy journal entry granting summary judgment to the board in February 2020. Maley has appealed.

LEGAL ANALYSIS

On appeal, Maley offers three reasons the district court erred in granting summary judgment against her: (1) The board improperly pilfered the compensation due her for the registration fees under K.S.A. 2017 Supp. 8-145(b) when it reduced her salary; (2) the board unlawfully retaliated against her for asserting her right to compensation for collecting the registration fees; and (3) the board violated the Kansas Wage Payment Act. We ultimately find those arguments unavailing and conclude the board paid Maley a reasonable salary conforming to the admittedly limited law governing the relationship between boards of county commissioners and county treasurers. In short, Maley incurred no redressable legal injury in the ways she had alleged.

The board, as the party seeking summary judgment, had the obligation to demonstrate to the district court, based on appropriate evidentiary materials, there were no disputed issues of material fact and judgment could, therefore, be entered in its favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the board submitted there was nothing for a jury or a district court judge sitting as fact-finder to decide that would make any difference. The board, in turn, argued it had the legal right to reduce Maley's salary in January 2018.

In opposing summary judgment, Maley either had to cite record evidence calling into question a material factual representation the board made in support of its motion or had to show the board failed to establish sound legal grounds for its action. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. When a party has identified disputed material facts, the motion should be denied in favor of a trial to permit a judge or jury to

6

resolve those disputes after hearing witnesses testify in court and reviewing any relevant documentary evidence. Likewise, if the undisputed facts do not support the movant's legal theory, the motion should be denied for that reason.

When considering summary judgment, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. We apply the same standards in reviewing the entry of summary judgment. Because a summary judgment presents a question of law—it entails the application of legal principles to uncontroverted facts—we owe no deference to the district court's decision to grant the motion, and our review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009). Here, we see no disputes over material facts, especially given the parties' stipulation about much of their interaction over Maley's compensation.

For her first point on appeal, Maley contends the board impermissibly appropriated the registration fees due her when it reduced her salary in January 2018 and violated K.S.A. 2017 Supp. 8-145(b) by doing so. She relies heavily on *Weber* to bolster her argument. We are unpersuaded that the board violated the law as Maley contends.

In *Weber*, the court basically held that a board of county commissioners cannot use the compensation due a county treasurer for collecting registration fees for the state to offset or reduce an otherwise reasonable salary paid the treasurer for work done for the county. 289 Kan. 1166, Syl. ¶ 11, 1181-82. The court expressly recognized that "the extra compensation" generated by K.S.A. 8-145(b) "is to be in addition to any other compensation received by county treasurers under any other law, not a replacement for other compensation." 289 Kan. at 1181. There, the Marshall County commissioners engineered just that sort of replacement when they reduced the treasurer's salary commensurate with an anticipated jump in remuneration from registration fees after the

Legislature increased the compensation rate. The court held the commissioners' action to be unlawful. The court suggested the Marshall County commissioners could reduce the treasurer's salary for county work if the adjustment were objectively justified and the resulting amount reflected fair compensation for that work. 289 Kan. at 1183-84.

The circumstances here are distinguishable. As the law stands, the board had the authority to cut Maley's salary for her county work so long as the adjusted pay reasonably compensated her for those tasks. *Weber*, 289 Kan. at 1183. In this context, reasonable compensation is not a precise dollars and cents figure but a range, albeit a relatively narrow one, reflecting fair remuneration. Cf. *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, Syl. ¶ 17, 386 P.2d 515 (1963) ("range of reasonableness" governs fair rate of return to regulated utility and its investors, on the one hand, and its customers, on the other); *Charlette v. Charlette Bros. Foundry, Inc.*, 59 Mass. App. Ct. 34, 43,793 N.E.2d 1268 (2003) (no actionable self-dealing when president of family owned corporation paid himself without directors' approval, but amount came "'well within the range of reasonable compensation'" for duties performed).

Here, for summary judgment purposes, a reasonable salary may be derived from the compensation Maley's predecessors received. Those treasurers would not have continued in the job if the compensation were unreasonable. As we have outlined, Maley's immediate predecessor received an annual salary of $59,400 for her combined work for the county and the state. In exchange, she had relinquished her compensation from the registration fees, so that money went into the Coffey County general fund. The parties do not suggest that the $10,161.20 Maley received in compensation for registration fees in 2017 was grossly atypical. So Maley's immediate predecessor received roughly $49,000 for her work for the county. The board's decision in January 2018 to pay Maley $50,000 for her county work falls within a demonstrable range of reasonableness. Going forward, Maley continued to receive the compensation due her

8

under K.S.A. 8-145(b) for collecting the vehicle registration fees, augmenting the salary the board approved.

In short, the undisputed evidence establishes the board set a reasonable salary for Maley in January 2018, although her total compensation may have been reduced because she chose to substitute the variable compensation she would receive from the registration fees for the composite salary the previous treasurers agreed to in place of that compensation. Given the issues here, we need not and do not offer an opinion on whether the composite salary arrangement would pass muster under K.S.A. 8-145(b) or *Weber*.

In *Weber*, the court suggested boards of county commissioners could consider the percentage of work a treasurer performs for the county and for the state in adjusting the treasurer's salary and might use an "accurately and fairly conducted" salary study to inform the decision. 289 Kan. at 1183. In our review, we give no real persuasive weight to the board's reliance on its salary survey or Maley's impromptu comment on the division of her work between the county and the state. Although those facts are undisputed, we are to draw inferences from those facts favoring only Maley, since she opposed the summary judgment motion.

The salary survey appears inexact, and its use of geographically proximate counties does not seem to provide an intrinsically sound set of comparators. The district court correctly, though perhaps euphemistically, characterized the result to be informal. The inference of informality is inconsistent with the standards in *Weber* for such studies and undercuts the document's value for the board on summary judgment. Similarly, the board's heavy reliance on Maley's comment about the division of her work is strained for summary judgment purposes, although she never directly offered a different breakdown. The proper inferences to be drawn from those circumstances seem better left to a fact-finder afforded an opportunity to see and hear the witnesses.

9

Our assessment of the summary judgment record also takes account of the board's stated reliance on Maley's supposed inexperience as a reason for reducing her salary. But, of course, Maley had even less experience in the treasurer's position when she started, and the board did not reduce the salary for the position then. At the outset, the board presumably imputed value to Maley's extended tenure as a deputy treasurer. A logical inference suggests the board offered Maley's lack of experience as a pretextual justification for its action, camouflaging an exercise of raw political power and authority strictly because Maley refused to agree to the compensation arrangement it had with her predecessors. On summary judgment, at least, that adverse inference of intent necessarily extends to the other reasons the board used to justify the salary reduction. A fact-finder could conclude the board was simply putting a facade of objectiveness on a political fight and power struggle with Maley that it intended to win in no uncertain terms.

But so long as Maley emerged from that battle with a reasonable salary for her county work coupled with the right to receive compensation under K.S.A. 8-145(b), she has failed to show a legally redressable injury. Even under the stringent summary judgment standards, we cannot say the board deprived Maley of the lawful compensation she was due as treasurer.

And that segues into Maley's second point on appeal: She contends the board unlawfully retaliated against her when it reduced her salary for insisting on receiving compensation under K.S.A. 2017 Supp. 8-145(b). On the summary judgment record, Maley may be half right, but that's not enough to sustain a claim for an actionable injury or wrong. The evidence fosters a reasonable inference that at least some of the commissioners were annoyed—to put it mildly—that Maley refused to go along with the compensation arrangement her predecessors accepted. And they viewed her as, in effect, double-dipping in 2017, despite their appeals and then threats that she not.

10

In response, the board reduced Maley's salary for her county work going forward, given her insistence on keeping the registration fee compensation. In a dictionary sense, the board retaliated against Maley in response to her stance on how she wanted to be compensated. Webster's New World College Dictionary 1240 (5th ed. 2016) ("retaliate" defined as "to return like for like"); Black's Law Dictionary 1573 (11th ed. 2019) ("retaliation" defined as "an instance of reprisal, requital, or revenge"). In some and perhaps many circumstances, retaliation may be a base or ethically questionable motivation. But a retaliatory motive is not, in and of itself, unlawful. The resulting action must violate a protected legal right of the target of the retaliation. Maley's argument on appeal founders in that respect.

Maley insisted she receive the compensation she was statutorily due for collecting the registration fees. The board complied with her request, and—in turn or in retaliation, depending on the characterization—it chose to reset her annual salary to compensate her for only county work, when the annual salary had previously covered both county and state duties the treasurer performed. The reduced pay, however, was objectively reasonable for the county duties, so the reduction inflicted no legal injury on Maley. Maley asserted a legal right she held as treasurer, and in return, the board exercised a like legal right it held to avoid repeating what it viewed as a marked overcompensation of Maley in 2017.

To bolster her argument, Maley points to the threats of adverse political consequences she faced as a demonstration of the commissioners' retaliatory intent in later reducing her salary. But the commisioners did no more than they had a legal right to do. They may have played political hardball, and at least two of them may have made unseemly threats to Maley. That some or all of the commissioners may have acted spitefully, with recrimination, or out of an intent to put Maley in her place or at a political disadvantage, is not unlawful for that reason. Whether such motivations or objectives could be considered unworthy or indecorous is irrelevant to this legal action.

11

For the most part judges disclaim being political animals and few can lay legitimate claim to being moral philosophers. We put ourselves in that rather large and unremarkable category. It is not for us to assess either the politesse or the wisdom of the blows the commissioners struck in their political fight with Maley. We may declare those blows foul, thus warranting a judicial remedy, only if Maley has identified an established legal boundary they broke. She has not.

In her last point, Maley contends the board's decision to reduce her salary violated the Kansas Wage Payment Act. We see no basis for the claim.

The Act requires employers to pay "wages" due their employees. K.S.A. 2020 Supp. 44-314(a). In turn, the Act defines "wages" as "compensation for labor or services rendered by an employee" and includes amounts determined on a commission basis. K.S.A. 2020 Supp. 44-313(c). The Kansas Supreme Court has described the Act as an "'expansive and comprehensive legislative scheme that is broad in its scope and the rights created for Kansas workers to secure unpaid wages earned from their labors.'" *Craig v. FedEx Ground Package System, Inc.*, 300 Kan. 788, 792, 335 P.3d 66 (2014) (quoting *Campbell v. Husky Hogs*, 292 Kan. 225, 233, 255 P.3d 1 [2011]). An employer violates the Act if it fails to pay employees the wages statutorily due them or earned under the terms of a contractual agreement.

Although the county plainly is an employer covered under the Act, we cannot say with such clarity that Maley, as an elected public official, is a covered employee. See K.S.A. 2020 Supp. 44-313(a) (defining "employer" to include cities, counties, and other political subdivisions of the state); (b) (defining "employee" as "any person allowed or permitted to work by an employer"). The parties have not joined the coverage issue, so we assume the Act applies to Maley.

12

Maley's claim under the Act fails because she has never been denied compensation legally owed her. The board ultimately acceded to Maley's request that she be compensated under K.S.A. 8-145(b) for the registration fees. Her statutory right to compensation for the state work has been honored. Maley has likewise been paid the salary the board has set as compensation for her work for the county. Although the board reduced her salary in January 2018, Maley received the full amount of the compensation set both before and after the change. So Maley was never paid less than what the board had voted to pay her. As we have already found, Maley received a fair or objectively reasonable salary for her county work after the reduction. Maley has not shown she has been paid less than the wages legally owed her for the services she has rendered. As a result, she has no viable claim under the Act for unpaid wages.

Having examined the points Maley has raised on appeal, we find no basis to reverse the district court's entry of summary judgment for the Coffey County Board of Commissioners.

Affirmed.